Louis B. HUGHES, et al., Appellants,

v.

HOUSTON NORTHWEST MEDICAL
CENTER, INC., et al., Appellees.

No. 01–83–0109–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 30, 1984.
Rehearing Denied Nov. 15, 1984.

See also Tex.App., 647 S.W.2d 5.

John K. Grubb, Blackburn, Gamble, Henderson & Grubb, Dermot Rigg, Hoover, Cox & Shearer, Houston, for appellants.

Norman Reidmuller, Butler & Binion, Houston, for appellees.

Before DOYLE and JACK SMITH, JJ., and ROBERT R. MURRAY, J., Retired.

OPINION

ROBERT R. MURRAY, Justice (Retired).

This is an appeal from the judgment of the trial court denying plaintiffs relief on their cause of action and granting defendants judgment on their cross-action.

In 1971, several individuals executed instruments creating two general partner-

ships and one corporation for the purpose of acquiring, developing and operating the Houston Northwest Medical Center. Except for minor differences, when the three entities were initially formed, Houston North Properties, Houston Northwest Medical Center, Inc., and Houston North Hospital Properties had essentially the same owners, including plaintiffs, Dr. Louis B. Hughes and Dr. Phillip T. Eichelberger, Jr.

Houston North Properties, a partnership, acquired a 56-acre tract of land in northwest Houston. That partnership is not a party to this suit. Houston North Hospital Properties (hereafter referred to as "the partnership") purchased 11 acres from Houston North Properties and constructed a hospital. Houston Northwest Medical Center, Inc. (hereafter referred to as "the corporation") was formed to operate the hospital as lessee.

When this suit was filed, plaintiffs were stockholders in the corporation but were no longer partners in the partnership. Plaintiffs were expelled from the partnership for failure to abide by the terms of the partnership agreement. *See Hughes v. Aycock*, 598 S.W.2d 370 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

After the hospital was completed, the corporation operated it under a lease from the partnership for 20% of the gross revenues. In mid-1980 the lease was canceled by agreement and a management contract was substituted in its place. At the same time, the corporation sold to the partnership all of its assets and liabilities, including two strips of land totaling 7.7 acres. The corporation continued to manage the hospital under the management contract. In June of 1982, the partnership announced that the hospital was to be sold and an agreement was made whereby the corporation would agree to cancel the management contract in return for $180,000. Plaintiffs filed this suit immediately upon learning of the proposed sale.

Plaintiffs brought this suit against the corporation, its officers and directors, and the partners of the partnership in the form of a shareholders' derivative suit alleging a breach of fiduciary duty concerning (1) the sale of 7.7 acres of land, (2) termination of the hospital lease in 1980, (3) the commingling of assets and liabilities of the corporation and the partnership, and (4) the termination of the management contract in 1982. The corporation filed a counterclaim against plaintiffs for reasonable attorney's fees under section 5.14 F of the Texas Business Corporations Act for bringing a shareholders' derivative lawsuit without reasonable cause. The partnership filed a counterclaim against plaintiffs alleging that they conspired with Mrs. Reba Eichelberger (a non-party) to tortiously interfere in the contractual relationship of the partnership.

After a two-week trial, the jury resolved all issues against plaintiffs and in favor of the defendants and cross-plaintiffs. The trial court entered a judgment on the verdict against Drs. Hughes and Eichelberger for $412,000 on the counterclaim of the partnership, $92,000 in attorney's fees on the counterclaim of the corporation, canceled the lis pendens, entered a permanent injunction against plaintiffs filing a lis pendens, and entered a declaratory judgment declaring defendants' non-liability to plaintiffs. The plaintiffs perfected an appeal presenting fifteen points of error.

Plaintiffs' first point of error asserts that the trial court erred in entering judgment against them in the amount of $412,-300, because the judgment did not conform to the pleadings. We overrule this point.

The partnership alleged a contractual relationship with a buyer involving an agreement whereby the partnership was to sell its hospital with a closing date of November 1982. It further alleged that plaintiffs conspired with Mrs. Reba Eichelberger, wife of Dr. Eichelberger, to delay and prevent the sale and that it suffered actual damages and loss as a result of the interference. The partnership properly pleaded a cause of action for tortious interference with its contract to sell the hospital. *See Armendariz v. Mora*, 553 S.W.2d 400, 404

(Tex.Civ.App.—El Paso 1977, writ ref'd n.r. e.).

Paragraph V of the partnership's counterclaim states:

> The amount of damage sustained by Defendants due to Plaintiffs' tortious interference with business and contractual relations is the amount of the difference between the current sale price of the hospital and the amount of the previous best offer, which difference is Seven Million Dollars ($7,000,000.00).

The testimony at trial showed that the contract to sell was still intact and the sale was only postponed for two months. The measure of damages awarded by the jury and granted by the trial court's judgment was the loss of profit caused by the delay of the closing date.

■ Plaintiffs contend that, because the partnership did not list damages caused by delay in their cross-claim, the pleadings will not support a judgment for such damages. We disagree. The law is well settled that the claimant is not required to allege the applicable legal measure of damages, and if all facts necessary to raise the issue on a proper measure of damages are in evidence, the court must submit a proper measure of damages to the jury. *Sneed v.*

*Martin,* 292 S.W.2d 891 (Tex.Civ.App.— Dallas 1956, no writ); *Dallas Railway & Terminal Co. v. Strickland Transportation Co.,* 225 S.W.2d 901 (Tex.Civ.App.— Amarillo 1949, no writ).

■ Plaintiffs' second point of error alleges that the trial court erred in entering judgment against them, because the counterclaim was in fact founded upon a malicious prosecution claim which was neither pleaded nor proved. They contend that, although the counterclaim is called tortious interference, the real theory on which evidence was presented was that plaintiffs had harmed the partnership by filing suit against it. One element to maintain a malicious prosecution action is a showing that the partnership had already prevailed on plaintiffs' suit before they could file a malicious prosecution action. *Smart v. Carlton,* 557 S.W.2d 553 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

As we have previously stated, the partnership properly pleaded a cause of action for tortious interference.[1] By its finding in answer to Special Issue No. 19, the jury found a tortious interference.[2] Plaintiffs contend that because evidence of the pending suit was before the jury, the cause of

---

[1] Paragraphs II and III of the counterclaim state:

II.

HNHP has an existing business and contractual relationship with LeRoy Pesch, M.D., Health Resources Corporation of America ("HRCA") and HNMC, Inc., a corporation formed by Dr. Pesch to facilitate his relations with HNHP. This relationship has ripened and grown to where HNHP has agreed to sell its hospital to HNMC, Inc. The sale was due to close on November 1, 1982. The sales price will include an initial payment of approximately Sixty Million Dollars ($60,000,000) and additional tens of millions of dollars to be paid out over time.

III.

Plaintiffs have made various false claims against HNHP. Plaintiffs have caused their false claims and allegations to be communicated to HNMC, Inc., HRCA and Dr. Pesch. Plaintiffs have further interfered with Defendants' business and contractual relationships by causing Mrs. Reba Eichelberger, acting as their agent and in conspiracy with them, to delay and prevent the sale of the hospital. In so doing,

Plaintiffs have tortiously interfered with HNHP's business and contractual relationships.

[2] Special Issue No. 19 reads as follows:

Do you find from a preponderance of the evidence that Louis Hughes or Phillip Eichelberger, Jr. tortiously interfered with the contractual relations of Houston North Hospital Properties with respect to the proposed purchaser of the hospital complex?

Answer "We do" or "We do not" as to Louis Hughes.

ANSWER: "We do".

Answer "We do" or "We do not" as to Phillip Eichelberger, Jr.

ANSWER: "We do".

You are instructed that "tortious interference" means intentional action calculated to cause damage to Houston North Hospital Properties in regard to any contracts which it has and which action is done with the purpose of causing it damage or loss without justifiable cause on the part of Louis Hughes or Phillip Eichelberger, Jr. and which action results in actual damage or loss to Houston North Hospital Properties.

action was for malicious prosecution. We disagree.

Litigation is a powerful weapon, and when instituted in bad faith for the purpose of causing damage or loss, it is a wrongful method of interference. The fact that the filing of a lawsuit could also serve as a basis for malicious prosecution is immaterial.

Plaintiffs' third point of error alleges that the evidence was legally and factually insufficient to support the judgment of tortious interference. In reviewing for legal sufficiency, we limit the scope of our inquiry to the determination of whether there is any evidence in the record to support the jury finding, viewing the evidence in the light most favorable to the findings and disregarding all evidence and inferences to the contrary. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). In contrast, in reviewing for factual sufficiency, we look at all the evidence in the record to determine if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). We have closely examined the evidence, and conclude that the evidence is sufficient to support the judgment.

The contract to sell the hospital was a document entitled "Purchase Agreement" dated June 28, 1982, between the partnership as seller, and HNMC, Inc., represented by Dr. LeRoy Allen Pesch, as purchaser. It included a term wherein the buyer agreed to pay the partnership four percent of the net revenues of the hospital for 10 years after the sale. The contract called for a closing of the sale on November 1, 1982.

Plaintiffs contend that by an agreement dated July 10, 1982, the parties agreed to delay the closing to January 4, 1983, because the purchaser needed the additional time to obtain financing; therefore, they were not the cause of the delay. However, the agreement of July 10 did not move the closing date to January 4, 1983. Instead, it allowed the purchaser to satisfy the cash payment at the November closing by giving a note payable on January 4, 1983. The July 10 agreement did not change the closing date. The week before the trial began on November 8, 1982, the closing date was moved back to January 4, 1983. The evidence demonstrated that the sale was less beneficial to the partnership than it would have been if there had been no interference with its contractual relations. Although the contract to sell was still intact, Texas law recognizes that interference which makes performance more burdensome or difficult, or of less or no value to the one entitled to performance, may constitute an actionable tort. *Tippett v. Hart,* 497 S.W.2d 606 (Tex.Civ.App.—Amarillo), *writ ref'd n.r.e. per curiam,* 501 S.W.2d 874 (Tex.1973).

Four percent of the net revenues was estimated by witnesses for the partnership to be between $400,000 and $417,000 per month. The jury awarded $412,000, which is roughly equivalent to one month of delay. The evidence was ample that the partnership suffered damage due to the interference. Damages must be established with reasonable certainty, *Jordan v. Cartwright,* 347 S.W.2d 799 (Tex.Civ. App.—Fort Worth 1961, no writ), but the amount of damages need not be certain, or future damages would never be recoverable. *See Adams v. Hood County Sand & Gravel Co.,* 354 S.W.2d 593 (Tex.Civ.App. —Fort Worth 1962, writ ref'd n.r.e.).

In their fourth point of error, plaintiffs complain that it was error to admit evidence of Mrs. Reba Eichelberger's appearance before the Texas Health Facilities Commission under Tex.Rev.Civ.Stat.Ann. art. 4418h, sec. 3.09 (Vernon Supp.1984). Mrs. Eichelberger appeared before the Commission in opposition to the partnership's application for a certificate of need concerning the expansion of the hospital.

Plaintiffs' only argument under this point is that proceedings before the Commission are privileged, citing *Reagan v. Guardian Life Insurance Co.,* 140 Tex.

105, 166 S.W.2d 909 (1942). That case stated the rule of privilege as follows:

An absolutely privileged communication is one for which, by reason of the occasion upon which it was made, no remedy exists in a civil action *for libel or slander.* (Emphasis added).

166 S.W.2d at 912. The privilege applies only to libel and slander actions against the person testifying at judicial or quasi-judicial proceeding. The fourth point of error is overruled.

■ In point of error No. 5, plaintiffs allege that the answer to Special Issue No. 21 was against the greater weight and preponderance of the evidence.[3] We disagree. We have reviewed the record in this case under the applicable standard and find the evidence to be sufficient.

The testimony of independent tax counsel, a certified public accountant, real estate appraisers, the comptroller for the corporation, partners and stockholders, and the records of the corporation and partnership would entitle, if not compel, the jury to believe that there was no "commingling" of any assets and that the cancellation of the hospital lease in 1980, the sale of the 7.7 acres of land in 1980, and the cancellation of the management contract in 1982 were beneficial to the corporation and its stockholders. A reasonable inquiry by plaintiffs before suit would have revealed no reasonable cause to bring a derivative suit.

In point of error No. 6, plaintiffs argue that the trial court erred in failing to impose a constructive trust on the assets of the corporation and the partnership. We disagree.

■ As we have previously stated, the jury resolved all special issues against plaintiffs. In order to prevail on this point, plaintiffs must show that the evidence es-

tablishes conclusively, or as a matter of law, their right to a constructive trust. *See Horton v. Dental Capitol Leasing Corp.,* 649 S.W.2d 655 (Tex.App.—Texarkana 1983, no writ); *Visage v. Marshall,* 632 S.W.2d 667 (Tex.App.—Tyler, 1982, writ ref'd n.r.e.). Corporate officers and directors owe the corporation and its shareholders a duty to act only in their best interest. *See International Bankers Life Insurance Co. v. Holloway,* 368 S.W.2d 567 (Tex.1963). A constructive trust is imposed by law because a wrongdoer would be unjustly enriched or would profit by his breach of fiduciary duty. *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401 (1960).

■ The acts complained of by the plaintiffs were shown to be beneficial to the corporation, and all money belonging to the corporation was accounted for through an inter-company transfer. The record fails to show that the partnership was unjustly enriched.

■ By points of error Nos. 7, 8, 9, 10, 11, 12 and 13, plaintiffs complain of rulings on special exceptions and the admission and exclusion of evidence. Plaintiffs fail to cite any authority and present only a general statement in support of these points. Tex. R.Civ.P. 418(e) (Vernon Supp.1984). Points of error not supported by argument and authorities are waived. *Leckey v. Warren,* 635 S.W.2d 752 (Tex.App.—Corpus Christi 1982, no writ); *Dryden v. Dairyland County Mutual Insurance Co.,* 633 S.W.2d 912 (Tex.App.—Beaumont 1982, no writ).

■ By point of error No. 15, plaintiffs allege that the cumulative effect of all the errors was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. We have found no

---

**3.** Special Issue No. 21 reads as follows:

Do you find from a preponderance of the evidence that Louis Hughes and Phillip Eichelberger, Jr. brought their derivative suit in this case without reasonable cause?

ANSWER "We do" or "We do not."

ANSWER: "We do".

In connection with this Special Issue, you are instructed that the "derivative suit" in this case refers to the claims brought on behalf of Houston Northwest Medical Center, Inc., related to the sale of the 7.7 acre parking lot, the termination of the hospital Lease, the cancellation of the hospital Management Contract, and the handling of the corporate assets.

assigned error; therefore, this point is without merit and is overruled. To obtain a reversal of a judgment an appellant must first show that there was error in fact. *Fulmer v. Thompson,* 573 S.W.2d 256, 265 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r. e.).

 Plaintiffs' fourteenth point alleges error in the declaratory adjudication that the partnership had no liability to plaintiffs on claims "which might have been" presented in this suit. The judgment recites as follows:

> It is therefore ORDERED, ADJUDGED and DECREED that all Defendants/Cross-Plaintiffs have judgment pursuant to the Declaratory Judgments Act, Article 2524-1, V.A.T.S. DECLARING, and it is hereby DECLARED that none of the Defendants have any liability to Plaintiffs upon any claims or causes of action which were *or which might have been* presented herein, including any assertion of any interest in the realty described in Exhibit A against any of the parties hereto. (Emphasis added).

The partnership argues that in declaring their rights, the trial court went no further than the law of res judicata permits. We disagree.

The law of res judicata in Texas was correctly stated by our Supreme Court in *Texas Water Rights Commission v. Crow Iron Works,* 582 S.W.2d 768, 771–772 (Tex. 1979) as follows:

> The doctrine of res judicata states that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot afterwards be litigated by new proceedings either before the same or any other tribunal. Steakley & Howell, *Ruminations on Res Judicata,* 28 S.W.L.J. 355 (1974). The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses *which arise out of the same subject matter* and which might have

been litigated in the first suit. (Emphasis added).

In any event, the trial court should not declare the effect of the judgment on other claims and causes of action not in issue.

The judgment is modified to delete the phrase "or which might have been," and as modified, is affirmed.