Percy E. GRIFFIN, Appellant,

v.

Dale H. ROWDEN, Jr., et al., Appellees.

No. 05–84–01099–CV.

Court of Appeals of Texas,
Dallas.

Dec. 3, 1985.

Rehearing Denied Jan. 16, 1986.

David A. Schecker, Ben L. Krage, Kasmir, Willingham & Krage, Dallas, for appellant.

Jeffrey L. Wood, Robert H. Nunnally, Jr., Freytag, Laforce, Rubinstein & Toefan, Dallas, for appellees.

Before STEPHENS, WHITHAM and HOWELL, JJ.

WHITHAM, Justice.

Appellant, Percy E. Griffin, sued appellees, Dale H. Rowden, Jr., Steven M. Rowden and Bruce E. Rowden, for damages resulting from the alleged breach of an oil and gas "farmout" contract, for specific performance, and for a declaration of equitable rights and title to certain tracts covered by a mineral lease. The Rowdens counterclaimed for fraud, conspiracy, negligence, slander of title, interference with advantageous business relationships, breach of contract, attorney's fees and exemplary damages. After jury trial, the trial court rendered a take-nothing judgment on Griffin's causes of action and rendered judgment for the Rowdens on their counterclaim. The only ground for the Rowdens' recovery, as reflected in the jury's answers to special issues, was Griffin's interference with the mineral lease. Griffin makes no challenge to the take-nothing judgment, but complains of the judgment against him. In light of the jury's findings, the issue narrows to whether Griffin tortiously interfered with contract by two acts on his part.

The first act was Griffin's filing of an allegedly frivolous lawsuit and notice of lis pendens against the mineral leases held by the Rowdens. Moreover, as to this first act, the issue narrows further to the question whether notice of lis pendens is absolutely privileged in a suit for tortious interference with contract. The second act was a visit by Griffin to the Rowdens' lessor, the Driscoll Foundation. In his first three points of error, Griffin contends that there was no interference as a matter of law and that there is no evidence, or insufficient evidence, to support the jury's finding of interference. We conclude that there is no evidence to support the jury's finding of interference.

Accordingly, we reverse the trial court's judgment in favor of the Rowdens and render judgment that the Rowdens take nothing against Griffin. Because Griffin advised this court at oral argument that he agreed lis pendens could be canceled and set aside, we sustain the Rowdens' cross-point of error and reverse the trial court's judgment insofar as it refuses to cancel and set aside Griffin's lis pendens and remand to the trial court with instructions. Consequently, we reverse and render in part and reverse and remand with instructions in part.

■ The essential elements of a claim for tortious interference are that: (1) a contract existed that was subject to interference; (2) the act of interference was willful and intentional; (3) such intentional act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss occurred. *Bellefonte Underwriters Insurance Co. v. Brown*, 663 S.W.2d 562, 573 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Armendariz v. Mora*, 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). In the present case, the existence of a contract subject to interference is undisputed. In answer to special issue number fifteen, the jury found "that [Griffin] willfully and intentionally took actions and engaged in a course of conduct which interfered with the existing and/or prospective contracts between [the Rowdens] and The Driscoll Foundation, the lessors of the Driscoll lease." In answer to special issue number sixteen, the jury found that the interference was a proximate cause of the Rowdens' damages. In special issue number seventeen, the jury found the amount of damages sustained by the Rowdens as a proximate result of the interference. The issue in this appeal centers upon the jury's finding to special issue number fifteen.

■ A "legally insufficient" point is a "no evidence" point presenting a question of law. In deciding that question, the appellate court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interests of justice require another trial. *Garza v. Alviar*, 395 S.W.2d

821, 823 (Tex.1965). In reviewing "factually insufficient evidence" points we consider all the evidence, including any evidence contrary to the judgment. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). We conclude, however, that Griffin has waived his right to complain of the insufficiency of the evidence. We reach this conclusion because Griffin failed to complain of factual insufficiency of the evidence in his motion for new trial as required by TEX.R. CIV.P. 324(b)(2). We hold, therefore, that when a party fails to complain of factual insufficiency of the evidence in a motion for new trial as required by rule 324(b)(2), the court of appeals need not consider that party's factual insufficiency evidence points. Applying these principles, we must determine if the filing of lis pendens and the visit to the Driscoll Foundation can support a finding of interference. If not, we must sustain Griffin's first and third points and reverse and render.

We approach the inquiry cognizant of the supreme court's language in *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 107 (Tex.1984):

One is privileged to interfere with a contract of another if it is done in the bona fide exercise of his own rights or if he has an equal or superior right in the subject matter to that of the plaintiff. This privilege extends to the actual assertion or threatened assertion of rights. Many lawsuits and claims are asserted even though their validity is not absolute. The uncertainty of a dispute is often the reason that one resorts to the courthouse for a resolution. In analogous situations, the failure to prevail after the institution and prosecution of a suit is not regarded as malicious. *The basis for the rule is that good faith litigants should be assured access to the judicial system.* One may not recover in an action for malicious prosecution because the opposing party was mistaken about the strength of a claim.

669 S.W.2d at 107 (emphasis added and citations omitted).

### Lis Pendens

No lis pendens was introduced into evidence. There is no evidence of the contents of the lis pendens or of its recording date or where it was recorded. The lis pendens enters upon the scene in the following answer of one of the Rowdens to a question put to him during the trial: "The plaintiffs filed a lis pendens on the property, and that effectively clouded the title so that we couldn't claim that we owned it clearly."

TEX.PROP.CODE ANN. § 12.007 (Vernon 1984) authorizes recording a notice of lis pendens. The effect of a statutory lis pendens notice, while depending somewhat upon the terms of the authorizing statute, is to put those interested in a particular tract of land on inquiry as to the facts and issues involved in the suit or action concerned. *Kropp v. Prather,* 526 S.W.2d 283, 287 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.). The filing of a notice of lis pendens is a part of the "judicial proceeding." *Kropp,* 526 S.W.2d at 287. Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged. *Kropp,* 526 S.W.2d at 286. In *Kropp,* these rules were applied in a cause of action for slander of title.

Relying upon *Kropp,* Griffin argues that lis pendens is absolutely privileged in an action for tortious interference. The Rowdens assert that lis pendens is not absolutely privileged in a suit for tortious interference and that the holding in *Kropp* applies only in a suit for slander of title. The Rowdens base their contention on language found in *Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909 (1942) and *Hughes v. Houston Northwest Medical Center, Inc.,* 680 S.W.2d 838 (Tex.Civ. App.—Houston [1st Dist] 1984, writ ref'd n.r.e.). The Rowdens point to the following language from *Reagan* which was also quoted in *Hughes:*

An absolutely privileged communication is one for which, by reason of the occasion upon which it was made, no remedy exists in a civil action for libel or slander.

*Reagan,* 140 Tex. at 110, 166 S.W.2d at 912; *Hughes,* 680 S.W.2d at 843. *Reagan* involved a libel action. We conclude, therefore, that the court's reference to "a civil

action for libel or slander" was by way of description of the case before it—a libel suit—and not by way of limitation to civil actions for libel and slander only. In *Hughes*, the question arose over the admissibility of previous testimony of a witness before a state commission. Quoting the above language from *Reagan*, the court found no error in admitting the testimony. Thus, *Hughes* was merely repeating *Reagan's* case descriptive language.

We conclude, therefore, that neither *Reagan* nor *Hughes* held that an absolute privilege can exist only in a libel and slander action. Consequently, we conclude that the holding in *Kropp* does not only apply in a suit for slander of title, but can apply in an action for tortious interference. In reaching this conclusion, we note the supreme court's words in *Sakowitz, Inc.* "that good faith litigants should be assured access to the judicial system." 669 S.W.2d at 107. It was this spirit of free and open access to the courthouse that was persuasive to the court in *Woodcourt II, Ltd. v. McDonald Co.*, 119 Cal.App.3d 245, 173 Cal.Rptr. 836 (1981). In *Woodcourt II*, it was alleged that the recording and maintenance of lis pendens constituted "intentional interference with prospective economic and business advantage." In slightly different language, that is our case. The California court of appeal answered the contention that the lis pendens afforded no absolute privilege as follows:

> Our courts have concluded that the privilege accorded by section 47, Civil Code, *and the public policy of affording litigants the utmost freedom of access to the courts* to secure their rights and defend without fear of being harassed by defamation actions underlying recognition of this privilege outweigh any public policy which might support appellant's position.

*Woodcourt II*, 119 Cal.App.3d at 249, 173 Cal.Rptr. at 838 (emphasis added and citations omitted). Thus, in holding that lis pendens was absolutely privileged and cannot be the basis of a cause of action for intentional interference, the court in *Woodcourt II* recognized that access to courts without fear of defamation actions

outweighs the danger of interference in the affairs of others. Consequently, we conclude that a holding in the present case that lis pendens was absolutely privileged would be in keeping with our supreme court's observations that "good faith litigants should be assured access to the judicial system."

 It follows, and we so hold, that lis pendens is absolutely privileged in an action for tortious interference with contract. Thus, we conclude that Griffin's lis pendens does not constitute evidence of probative value to support the jury's finding of interference. We conclude further, therefore, that Griffin's lis pendens did not constitute interference as a matter of law.

### Griffin's Visit to the Driscoll Foundation

The remaining act on the part of Griffin asserted to support the finding of interference arises from a contact with the Driscoll Foundation initiated by Griffin. The parties agree that the following deposition testimony of a Mr. Mullican tells us all that we are to know about Griffin's visit to the Driscoll Foundation and what was said during the meeting. At the time, Mullican was Griffin's business associate.

QUESTION: Have you had any meetings with any representatives of the Driscoll Estate?

MULLICAN: Yes, sir, I have.

QUESTION: When did that occur?

MULLICAN: It's been fairly recently. I guess a month ago, six weeks ago. Let me think a minute. Right after the first of the year, that would be a month ago.

QUESTION: Where did it occur?

MULLICAN: In Corpus Christi.

QUESTION: Who was present?

MULLICAN: Mr. Zabinski, Mr. Griffin and myself.

QUESTION: Was the purpose of that meeting to acquire some leasehold interest from them?

MULLICAN: No, sir, we wanted to make him aware of what was happening and that there was litigation and we were trying to straighten it out as quickly as we could.

QUESTION: Did you say anything in any form of language along the lines that you thought they ought to take the lease back from Mr. Rowden?

MULLICAN: Never came up. Never came up.

QUESTION: What was the outcome of the meeting?

MULLICAN: Mr. Zabinski informed us that the lease was being held by production and if we had a farmout and had some problems with it, he didn't know if there was anything he could do, but he appreciated us coming by to visit.

Griffin did not testify about this meeting nor did Mr. Zabinski, who presumably was a representative of the Driscoll Foundation. Nevertheless, the Rowdens argue that Mullican's testimony supports the jury finding of interference. The Rowdens' contentions can be best understood from this quotation in their brief:

The jury could reasonably have found, when considering such evidence in connection with the groundlessness of Appellant's claims to an interest in the mineral leasehold and his motivations, mental state, and demeanor as exhibited at trial, that Appellant's action in contacting and communicating his alleged claims and the existence of litigation to the Driscoll Foundation was taken as an intentional act to attempt to interfere with the contractual relationship between Appellees and the Driscoll Foundation (*i.e.,* the mineral lease).

We disagree. We conclude that Mullican's uncontradicted testimony establishes nothing more than the occurrence of a meeting between Griffin, his associate Mullican and a representative of the Driscoll Foundation. Indeed, Mullican's testimony refutes the Rowdens' implication that the purpose of the meeting was to induce the Driscoll Foundation to take the mineral lease back from the Rowdens. Mullican testified that the suggestion that "[Griffin] thought [the Driscoll Foundation] ought to take the lease back from Mr. Rowden [n]ever came up. Never came up." Furthermore, merely because Griffin and Mullican went to the meeting "wanting to make [the Driscoll Foundation] aware of what was happening and that there was litigation" does not tell us or the jury that Griffin and Mullican proceeded at the meeting to actually make the Driscoll Foundation aware of what was happening and that there was litigation. In short, "wanting" is not "doing," and Mullican's testimony fails to prove that Griffin did anything to interfere with the mineral lease. Therefore, we conclude that the only reasonable inference to draw from Mullican's testimony is that there was no interference whatsoever and that any other conclusion would be the result of conjecture and speculation. We conclude, therefore, that Griffin's visit to the Driscoll Foundation does not constitute evidence of probative value to support the jury's finding of interference. Thus, we conclude further that Griffin's visit to the Driscoll Foundation does not constitute interference as a matter of law.

Accordingly, we conclude that there is no evidence to support the jury's finding of interference and that there was no interference as a matter of law. Therefore, we sustain Griffin's first and third points of error. Accordingly, we reverse the trial court's judgment insofar as it renders judgment in favor of the Rowdens and against Griffin, and we render judgment that the Rowdens take nothing against Griffin.

### Cancellation of the Lis Pendens

Subsequent to the return of the verdict, the Rowdens filed their third amended motion to cancel lis pendens. By cross-point of error, the Rowdens complain of the trial court's denial of their motion in the trial court's judgment and of the trial court's failure to cancel and set aside the lis pendens. A reading of the Rowdens' motion indicates that the lis pendens was filed not only by Griffin but also by two parties not before us on this appeal, Comco-Centurion Oil and Minerals Co., Inc. and Rockport Resources, Inc. The Rowdens, however, do not appeal that part of the trial court's judgment denying their third amended motion to cancel lis pendens as to Comco-Centurion and Rockport Resources. At oral argument, Griffin advised this court that

he agreed that the lis pendens could be canceled and set aside. We treat that agreement as applying to Griffin only and not to Comco-Centurion and Rockport Resources. Furthermore, the record fails to provide sufficient information for this court to write a judgment canceling and setting aside the lis pendens as to Griffin. Consequently, we reverse the trial court's judgment insofar as it denies the Rowdens' third amended motion to cancel and set aside the lis pendens notice of Griffin, and we remand the case to the trial court with instructions to cancel and set aside the lis pendens notice of Griffin in such form and language necessary and required to accomplish these instructions.

Reversed and rendered in part and reversed and remanded with instructions in part. All costs in the trial court are taxed one-half to Griffin and one-half to the Rowdens. All costs in this court are taxed to the Rowdens.