795 S.W.2d 794 (1990)
George J. PRAPPAS, et al., Appellants,
v.
MEYERLAND COMMUNITY IMPROVEMENT ASSOCIATION, et al., Appellees.
No. A14-89-199-CV.
Court of Appeals of Texas, Houston (14th Dist.).
June 28, 1990.
Rehearing Denied August 23, 1990.
D. Craig Olivier, Jay S. Siskind, George J. Prappas, Houston, for appellants.
M. Karinne McCullough, Gregg S. Weinberg, Randall D. Wilkins, Nicholas E. Zito, Houston, for appellees.
Before J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

*795 OPINION
JUNELL, Justice.
Lis pendens provides a mechanism for putting the public on notice of certain categories of litigation involving real property. This case raises the issue whether a lis pendens is a part of the judicial process so that the resulting absolute privilege bars a damage suit over the filing of the lis pendens. Prior decisions indicate that the answer is yes. Griffin v. Rowden, 702 S.W.2d 692 (Tex.App.-Dallas 1985, writ ref'd n.r.e.); Kropp v. Prather, 526 S.W.2d 283 (Tex.Civ.App.-Tyler 1975, writ ref'd n.r.e.). We must decide whether the outcome changes if (a) the lis pendens in question derives from litigation which falls outside the statutory categories, (b) malice actuated the filing, or (c) there was undue delay in filing.

I
The facts are uncomplicated. Appellants are homeowners who sought to sell their land after heavy flooding occurred in 1983. Although appellees include other homeowners, we will treat them as one with the Meyerland Community Improvement Association (MCIA). MCIA brought suit upon learning of the possible sale, fearing commercial development would follow in violation of existing deed restrictions. That lawsuit failed. It was a declaratory judgment suit in which MCIA sought to stop certain lot owners from selling their properties for a proposed nonresidential use. After the trial court judgment but just before the real estate transaction was to take place, MCIA filed a lis pendens notice, the recordation of which quashed the sale. The court of appeals affirmed the judgment, and the supreme court declined to review the case. For further factual background, see Meyerland Comm. Impr. Ass'n v. Temple, 700 S.W.2d 263 (Tex.App. Houston [1st Dist.] 1985, writ ref'd n.r. e.). As soon as the supreme court refused the writ, the litigation was finished and MCIA withdrew the lis pendens.
But because the sale was now dead, the would-be sellers sued MCIA for slander of title, tortious interference with contract, and various other causes of action. They alleged that the lis pendens was wrongful (in other words, unauthorized by statute) and therefore unprivileged. The trial court rendered a take nothing summary judgment against them.
There is a factual twist worth bearing in mind: no one ever filed a notice of lis pendens while the original jury trial was occurring. Thus when the trial judge in that suit signed the judgment in November 1984, no lis pendens existed. This is not to suggest the suit was unknown or clandestine. To the contrary, all relevant parties including the potential purchaser had actual knowledge of the litigation, and for that reason there was no need to put anyone on constructive notice. As the appellate process began going forward, MCIA learned that the proposed transaction was on the verge of taking place. MCIA filed its notice of lis pendens in March 1985, approximately one week before closing was to occur. Strange though it may seem, that act resulted in the transaction's failure, despite the indisputable fact that everyone involved in the transaction already knew of the litigation.

II
There are three major lis pendens statutes involved in this case. The first authorizes use of the device and regulates the manner of filing.[1] The second spells out the effects of a such a filing.[2] The *796 third provides a statutory method for cancellation of a lis pendens.[3] That statutory method for cancelling a lis pendens is not the exclusive remedy for nullifying an unauthorized filing, however. When there is no basis to support a lis pendens, the affected party may seek an appropriate order from the district court, with mandamus relief available in the event the district court refuses to order cancellation. See Olbrich v. Touchy, 780 S.W.2d 6 (Tex.App. Houston [14th Dist.] 1989, orig. proc.); Moss v. Tennant, 722 S.W.2d 762 (Tex.App. Houston [14th Dist.] 1986, orig. proc.); Helmsley-Spear of Texas, Inc. v. Blanton, 699 S.W.2d 643 (Tex.App.-Houston [14th Dist.] 1985, orig. proc.). In order to determine whether a statutory basis existed for filing the notice in this case, we look to the requirements of § 12.007(a).
Section 12.007(a) is operative only when the underlying lawsuit involves either
(1) title to real property,
(2) establishment of an interest in real property, or
(3) enforcement of an encumbrance against real property.
Here the underlying lawsuit was a declaratory judgment action seeking construction of certain deed restrictions. It also asked for injunctive relief. Plainly, it fails to qualify within the first two categories; only the encumbrance option remains. The parties have briefed and argued the issue whether MCIA v. Temple was litigation to enforce an encumbrance. We will assume, without deciding, that the declaratory judgment suit there was not an action to enforce an encumbrance. We make this assumption because appellants concede the existence of an absolute privilege in the event of statutory authority for the filing. See Griffin v. Rowden, 702 S.W.2d 692 (Tex.App.-Dallas 1985, writ ref'd n.r.e.) (absolute privilege for filing lis pendens); Kropp v. Prather, 526 S.W.2d 283 (Tex. Civ.App.-Tyler 1975, writ ref'd n.r.e.) (same).
It is worthwhile to examine the Griffin and Kropp opinions before undertaking to decide the scope of the privilege, since they are the principal cases which expound Texas law on the subject. In Kropp the court started with the proposition that "[a]ny communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot form the basis for a cause of action in libel or slander." 526 S.W.2d at 286; see, e.g., Runge v. Franklin, 72 Tex. 585, 10 S.W. 721 (1889) (recognizing the rule). The court then characterized the issue as whether a lis pendens is a *797 publication in the course of a judicial proceeding. It concluded:
Because the recording of a lis pendens is specifically authorized by statute and has no existence separate and apart from the litigation of which it gives notice, we hold that the filing of a notice of lis pendens in this action is a part of the "judicial proceeding."
In Am.Jur.2d, Lis Pendens, Sec. 22, it stated that: "A notice of lis pendens, filed under the authority of a statute, is, it has been held, as much entitled to the benefit of privilege, within contemplation of libel laws, as are the pleadings in the action to which the notice relates."
526 S.W.2d at 287. The opinion went on to cite out-of-state cases which recognize such a privilege, including some California jurisprudence to which we shall return later. Two salient points emerge from Kropp. First, lis pendens is specifically authorized by statute. Second, like other devices authorized by statute (such as pleadings, affidavits, briefs, or testimony) the lis pendens is part of a judicial proceeding and therefore privileged.
In Griffin the court also found the privilege to be absolute. There the opinion agreed with Kropp, but also rested on the open courts policy recognized by the supreme court in Sakowitz, Inc. v. Steck, 669 S.W.2d 105, 107 (Tex.1984) ("good faith litigants should be assured access to the judicial system"). Griffin went on to cite Woodcourt II, Ltd. v. McDonald Co., 119 Cal.App.3d 245, 173 Cal.Rptr. 836 (1981) for the same proposition:
Our courts have concluded that the privilege accorded by section 47, Civil Code, and the policy of affording litigants the utmost freedom of access to the courts to secure their rights and defend without fear of being harassed by defamation actions underlying recognition of this privilege outweigh any public policy which might support appellant's position.
702 S.W.2d at 695, citing 119 Cal.App.3d at 249, 173 Cal.Rptr. at 838 (emphasis added in Griffin and citations omitted). Although the Griffin opinion did not refer directly to the Texas constitution's open courts provision, art. I, § 13, that legal policy was implicit in the tribunal's decision.
Appellants nowhere address the open courts argument, but they do try to distinguish Kropp and Griffin on the basis that the notices in those cases actually satisfied the statutory prerequisites for filing, and thus legal authority existed for the lis pendens notices. We find the purported distinction unpersuasive. Appellants' concept of "authority" seems far too narrow. They argue that unless a notice fits within one of the three pigeonholes of § 12.007, it fails to comply with the statute and therefore lacks authority. But the remedy for miscreance within the judicial process is to seek judicial relief as a part of that process.
For example, irrelevant evidence is inadmissible in a trial. See Tex.R.Civ.Evid. 402. Such evidence, when offered, is therefore subject to an order to strike it from the record. Thus if a witness testifies, "Yes, the defendant is the man who shot me, and by the way, he has a loathsome disease," the court should sustain a timely objection, strike the slanderous remark, and instruct the jury to disregard it. Yet no one would suppose for a moment that the privilege evaporated simply because the comment was unauthorized. The same result would occur if an impropriety surfaced in another part of civil proceedings adverted to by Kropp, namely pleadings. For example, an amended pleading would be "unauthorized" if it were filed late and without leave of court, see Tex.R.Civ.P. 63, but one cannot conceive of such a defect making the slightest difference as far as absolute privilege is concerned. Rather, the remedy would be for the aggrieved party to ask the court to strike the offending papers. Although such a pleading, like irrelevant evidence, is not authorized in the sense in which appellants employ that term, no loss of privilege ensues.
We could come up with a number of similar instances to prove our point. Noncompliance with filing requirements in no way abrogates the privilege which has long gone hand in hand with judicial proceedings; *798 the remedy is removal of the noncomplying material. We have already observed that mandamus will lie when a trial court fails to grant the relief provided in § 12.008, that is, when the court denies a well-taken motion to cancel the notice. Indeed, impossibility of recovering damages for a wrongful lis pendens filing is precisely why our courts have given a broad reading to § 12.008, so as to grant an effective remedy. See Ransopher v. Deer Trails, Ltd., 647 S.W.2d 106, 109 (Tex.App.-Houston [1st Dist.] 1983, no writ) (cases such as Kropp "demonstrate the need for relief like that granted here"). Moreover, Texas cases indicate that the party requesting relief from an improper lis pendens need not even follow the procedures of § 12.008. See Lane v. Fritz, 404 S.W.2d 110 (Tex.Civ. App.-Corpus Christi 1966, no writ); see also Hughes v. Houston Northwest Med. Center, 647 S.W.2d 5, 7 (Tex.App.-Houston [1st Dist.] 1982, writ dism'd) ("In an appropriate case a court may order the cancellation of a lis pendens where it is established that the party filing such notice has not complied with the provisions of [the statute]"). The rationale there is that since the notice itself fails to comply with the Property Code, there is no reason to limit permissible relief to those statutes. For this reason, appellants cannot benefit from the position they took at oral argument, where they suggested the trial court could not issue a cancellation order because the passage of time had resulted in the loss of subject matter jurisdiction. Lane v. Fritz makes clear that they have a remedy by new and independent lawsuit.
Furthermore, by conceding the existence of an absolute privilege as recognized by Texas caselaw, appellants necessarily concede that a lis pendens is part of the judicial process. We cannot accept their distinction between "authorized" and "unauthorized" notices, turning as it does on technical compliance with the statute. Such a rule would not only invite secondary litigation over whether primary litigation had involved the right sort of subject matter (that being laid out in § 12.007(a)), it would also open up derivative lawsuits over noncompliance with § 12.007(b). The latter portion of the statute requires identification of the parties, the land affected, the court in which the case is being tried, and so on. Under appellant's rule, omission of, say, the suit's docket number would plunge the lis pendens into the unauthorized zone and wipe out the so-called absolute privilege. This we cannot accept. Nor would such a rule stop with lis pendens, as there would be no logical reason for denying absolute privilege to one who published defamatory material in a lawsuit which was brought to a court that lacked subject matter jurisdiction. Accordingly, every potential litigant would have to perform the judicial function of deciding whether jurisdiction existed, lest an action be "unauthorized." That is not the law. See Runge v. Franklin, 72 Tex. 585, 590, 10 S.W. 721, 724 (1889) (rejecting necessity of subject matter jurisdiction on the ground that "Citizens ought to have the unqualified right to appeal to the civil courts for redress"); Prosser on Torts § 114, at 819 (5th ed. 1984) ("but this would compel everyone to decide the question of jurisdiction at his peril").
Appellants offer two out-of-state cases as precedent for denying appellees a privilege in this case. Initially, they cite Shurpin v. Elmhirst, 148 Cal.App.3d 105, 195 Cal.Rptr. 743 (1983). That opinion distinguished a long line of California precedents which upheld the privilege (such as Woodcourt II, mentioned in Kropp) and found a lis pendens actionable, because allegations of nuisance failed to fit within the statutory pigeonholes. We are unimpressed by this citation for several reasons. First, we are in a poor position to make an accurate assessment of California law. For example, the privilege there is apparently a statutory creature, based at least in part on art. 47 of the Civil Code, rather than the constitution and common law as in Texas. Similarly, it is difficult for us to tell how coherent California caselaw is on this subject, as California supreme court precedent points directly the other way. Albertson v. Raboff, 46 Cal.2d 375, 295 P.2d 405 (1956) (absolute privilege exists for lis pendens because recordation of the notice is in effect *799 a republication of pleadings). The parties have not undertaken an exhaustive analysis of California law, and we hesitate to make an ill-advised foray into that arena alone. More important, whatever the precedential value of Shurpin on the day it was decided, that value is now eroded, because the California supreme court decertified the opinion for publication. There is no need to venture a guess as to how much less the opinion is worth now, given the historical controversy over the decertification practice.[4]
Appellants also refer us to Israelson v. Bradley, 308 N.Y. 511, 127 N.E.2d 313 (Ct.App.1955). There the New York high court observed:
Permission to file a notice of pendency of action in specified cases is an added privilege granted to a litigant by statute which does not affect his cause of action... This is an extraordinary privilege which has been granted to a litigant upon the mere filing of the notice of a pendency of action, a summons and a complaint and strict compliance with the requirements of section 120 is required. Proper administration of the law by the courts requires promptness on the part of a litigant so favored and that he accept the shield which has been given him upon the terms imposed and that he not be permitted to so use the privilege granted that it becomes a sword usable against the owner or possessor of realty. If the terms imposed are not met, the privilege is at an end.
127 N.E.2d at 315. This citation is worth even less than the now decertified Shurpin opinion. The California supreme court may have thought Shurpin wrong, but at least the opinion there was on point. The Israelson language, on the other hand, is not even close to our case. The New York court was simply saying that the idea of lis pendens amounted to a gift from the state legislature, a privilege in the generic sense. Israelson was not a case over slander of title or tortious interference. It involved only the question whether a notice should be cancelled, that is to say, whether there was any statutorily provided ability to file in the first place. That is the sense of the word "privilege"; it is purely verbal happenstance that the court chose the term it did instead of "indulgence," "dispensation," or some other synonym. In any event, it suffices to say that although Griffin and Kropp are more than enough authority for our holding,[5] there are ample authorities from other states which reach the same conclusion. See, e.g., Zamarello v. Yale, 514 P.2d 228 (Alaska 1973); Kelly v. Perry, 111 Ariz. 382, 531 P.2d 139 (1975); Dethlefs v. Beau Maison Dev. Corp., 511 So.2d 112 (Miss.1987); Houska v. Frederick, 447 S.W.2d 514 (Mo.1969).

III
The remaining questions deal with malice and laches. As to the former, it is in the nature of an absolute privilege that malice is immaterial. Whereas malice dissolves a qualified privilege, the persistence of an absolute privilege does not turn on the presence or absence of good faith. See Runge v. Franklin, 72 Tex. 585, 589, 10 S.W. 721, 723 (1889).
The laches argument points out the delay in filing the lis pendens and concludes that MCIA should not have been *800 entitled to put off filing the notice until well after trial. In our view this argument fails. In the first place, laches is an equitable doctrine, peculiarly relevant to equitable remedies which tend to have naturally hazy edges. Lis pendens, now heavily regulated by statute, does not constitute the sort of equitable device that invites a laches defense (like injunction or specific performance). And that takes us to our second point: laches is a defense and not a cause of action. The appropriate juncture for raising a laches claim, even if one existed against the legal device in question, would have been at the time MCIA filed the lis pendens. Appellants might then have been able to make a case of prejudicial delay. But it turns laches on its head to transform the doctrine into a basis for bringing this derivative lawsuit.
All points of error are overruled, and the summary judgment is affirmed.
J. CURTISS BROWN, Chief Justice, dissenting.
Although it is not a conclusion I reach readily, I believe the Dallas court made a mistake in Griffin v. Rowden, 702 S.W.2d 692 (Tex.App.-Dallas 1986, writ ref'd n.r.e). Because the majority follows that decision today, I respectfully dissent. Even if Griffin is correct we should not apply its protection to a deliberate, ex parte act done after the trial had been concluded.
There is no serious dispute over the facts of this case. The only dispute is over the existence of a privilege to commit a tort. I see no reason to recognize such a privilege here, where the tortfeasors waited until the last possible minute to record the lis pendens, and where they did so with the explicit intention of stopping the sale. Our law already provides a mechanism for preserving the status quo. That is the purpose of a temporary injunction. Instead, the appellees sought the benefits of an injunction without the burdens of posting a bond.
We should not, as a matter of policy, reward such sharp practices as the one assailed here. If that requires an adjustment of existing doctrine, then it is an adjustment worth making. The court's opinion rests on two assumptions. The major premise is that an absolute privilege attends judicial proceedings; the minor premise is that filing of a notice of lis pendens constitutes a judicial proceeding. Hence, the court concludes, an absolute privilege goes along with the filing of a notice of lis pendens. I do not share this conclusion, because I disagree with the court's minor premise. In my view the filing of a notice of lis pendens fails to qualify as a judicial proceeding. This view seems entirely sensible, when one recognizes the rationale for the absolute privilege that goes along with judicial proceedings: the hands-on administration of justice in a courtroom by a live judge. Lis pendens is not a judicial proceeding in that sense.
This approach allows us to reach a just result on the basis of sound legal principles. In any event, I cannot abide the notion that the deliberate act at bar deserves judicial protection. It walks like a tort, talks like a tort, and quacks like a tort. We should treat it accordingly. I say we should reverse and remand the unjust judgment below.
NOTES
[1] The statute provides:

After the plaintiff's statement in an eminent domain proceeding is filed or during the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property, a party to the action who is seeking affirmative relief may file for record with the county clerk of each county where a part of the property is located a notice that the action is pending. Tex.Prop.Code § 12.007(a).
[2] The statute provides:

(a) A recorded lis pendens is notice to the world of its contents. The notice is effective from the time it is filed for record, regardless of whether service has been made on the parties to the proceeding.
(b) A transfer or encumbrance of real property involved in a proceeding by a party to the proceeding to a third party who has paid a valuable consideration and who does not have actual or constructive notice of the proceeding is effective, even though the judgment is against the party transferring or encumbering the property, unless a notice of the pendency of the proceeding has been recorded under that party's name in each county in which the property is located.
Tex.Prop.Code § 13.004.
[3] The statute provides:

(a) On the motion of a party or other person interested in the result of or in property affected by a proceeding in which a lis pendens has been recorded and after notice to each affected party, the court hearing the action may cancel the lis pendens at any time during the proceeding, whether in term time or vacation, if the court determines that the party seeking affirmative relief can be adequately protected by the deposit of money into court or by the giving of an undertaking.
(b) If the cancellation of a lis pendens is conditioned on the payment of money, the court may order the cancellation when the party seeking the cancellation pays into the court an amount equal to the total of:
(1) the judgment sought;
(2) the interest the court considers likely to accrue during the proceeding; and
(3) costs.
(c) If the cancellation of a lis pendens is conditioned on the giving of an undertaking, the court may order the cancellation when the party seeking the cancellation gives a guarantee of payment of a judgment, plus interest and costs, in favor of the party who recorded the lis pendens. The guarantee must equal twice the amount of the judgment sought and have two sufficient sureties approved by the court. Not less than two days before the day the guarantee is submitted to the court for approval, the party seeking the cancellation shall serve the attorney for the party who recorded the lis pendens a copy of the guarantee and notice of its submission to the court.
Tex.Prop.Code § 12.008.
[4] See Gerstein, "Law by elimination:" depublication in the California Supreme Court, 67 Judicature 292 (1984); Grodin, The Depublication Practice of the California Supreme Court, 72 Cal.L.Rev. 514 (1984); Note, Decertification of Appellate Opinions: The Need for Articulated Judicial Reasoning and Certain Precedent in California Law, 50 S.Cal.L.Rev. 1181 (1977).
[5] In a recent decision the Dallas court has reaffirmed its recognition of an absolute privilege for the filing of a notice of lis pendens. Sharif-Munir-Davidson Dev. Corp. v. Bell, 788 S.W.2d 427 (Tex.App.-Dallas, 1990, n.w.h.) (not yet published). There it disallowed a malicious prosecution suit which arose with respect to the lis pendens. To the argument that dire consequences follow the recordation of a lis pendens, the court reasoned, "Those consequences, however, also follow actual or constructive notice of the pending lawsuit. Therefore, by [appellant's] reasoning, if a court clerk, in response to a telephone inquiry from a prospective purchaser, provided the information listed in section 12.007, then the clerk would actually interfere with [appellant's] property." Id. at 430 n. 1. The privilege therefore prevailed.