TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00198-CV








George G. Green and Green Capital Corp., Appellants



v.



Allied Interests, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 96-02545, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 Appellants George G. Green and Green Capital Corporation (collectively "Green")
challenge a judgment rendered in favor of appellee Allied Interests, Inc. ("Allied"). Allied sued Green for
breach of contract and fraud regarding services rendered by Allied in collecting a judgment for Green. 
After a trial on the merits, the jury found that the parties had entered into an oral contract and that Green
had breached the contract and committed fraud against Allied. Allied elected to recover on the fraud
theory to maximize its recovery, and thus pursuant to the jury's findings, the trial court rendered judgment
against Green for $244,804.99 in actual damages and $365,000 in exemplary damages, plus prejudgment
interest and court costs. See Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co., 747 S.W.2d 785,
787 (Tex. 1988) (when jury returns favorable findings on two or more theories, party has a right to a
judgment on theory entitling him to greatest or most favorable relief). Green appeals on five points of error,
challenging the basis of recovery for fraudulent inducement and the measure of damages, the sufficiency of
the pleadings, the sufficiency of the evidence to support Green's fraud claim, and the award of exemplary
damages based on an erroneous jury charge. We will affirm.


BACKGROUND


 George G. Green obtained a multi-million dollar judgment in a whistleblower lawsuit against
the State of Texas. See Texas Dept. of Human Servs. v. Green, 855 S.W.2d 136 (Tex. App.--Austin
1993, writ denied). In order to collect from the State after the judgment became final, Green hired Allied. 
Jon Starnes, Allied's sole shareholder and employee, assembled a group of various professionals to assist
in the collection efforts including attorneys, a media professional, a political consultant, a lobbyist, and a
former district judge. Approximately eighteen months after Allied was hired, the State finally agreed to pay
Green $13,775,000. 

 After reaching this settlement with the State, Allied presented Green a bill for services
rendered in the amount of $244,804.98. Green refused to pay Allied. The dispute centers around the
agreement entered into between Green and Allied. Allied's bill for services was based on an oral
agreement which, according to Allied, required Green to pay Allied $150 per hour for services rendered
for the successful collection effort. (1) Green disputes this amount, claiming that he never agreed to pay Allied
an hourly rate for an unlimited amount of hours. Instead, Green argues that the terms of their oral
agreement were articulated in a revoked written agreement signed May 17, 1994, which only required
Green to pay Allied a flat monthly rate of $3,500. (2) 

 As discussed in more detail below, both parties presented evidence to the jury concerning
their version of the oral agreement. Furthermore, Allied contended that Green had fraudulently induced
Allied to continue working on Green's project. Specifically, Allied's fraud claim was premised on its
allegations that following the termination of the written agreement, Green fraudulently induced Allied to
continue working on the judgment-collection project by promising to pay Allied at the full rate of $150 per
hour, a promise which Green had no intention of keeping. The jury found Allied's version more persuasive
and awarded Allied damages for breach of contract. The jury also found that Green never intended to
perform the contract as represented by him and therefore awarded Allied both actual and exemplary
damages for fraud. After Allied elected damages on the fraud theory, the trial court ordered Green to pay
Allied benefit-of-the-bargain damages of $244,804.99 and $365,000 in exemplary damages. Green
challenges Allied's fraud recovery under a benefit-of-the-bargain theory, as well as the trial court's
judgment that Green breached his contract with Allied and committed fraud. 


DISCUSSION

 In his first and second points of error, Green argues that benefit-of-the-bargain damages
cannot be recovered in tort for a fraudulent inducement of contract claim. We disagree. 

 The Texas Supreme Court recently addressed this very issue in Formosa Plastics Corp.
USA v. Presidio Engineers and Contractors, Inc., 41 Tex. Sup. Ct. J. 289 (Jan. 16, 1998). In that
decision the Court held that:


tort damages are recoverable for a fraudulent inducement claim irrespective of whether the
fraudulent representations are later subsumed in a contract or whether the plaintiff only
suffers an economic loss related to the subject matter of the contract. 



Id. at 293 (emphasis added). The Court further stated that "Texas recognizes two measures of direct
damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure." Id.
at 294. Therefore, because Texas law clearly recognizes benefit-of-the-bargain damages for common law
fraud, we hold that the trial court did not err in awarding such damages. We overrule Green's first two
points of error.

 In his third point of error, Green argues that the trial court erred in rendering judgment for
benefit-of-the-bargain damages because Allied failed to specifically plead that it was seeking such damages
for fraud. This point is without merit. 

 The law only requires that a plaintiff specifically plead special damages, such as
consequential damages which "are not presumed to be the necessary and usual result of the wrong."
Airborne Freight Corp. v. C.R. Lee Enters., Inc., 847 S.W.2d 289, 295-96 (Tex. App.--El Paso 1992,
writ denied). Because benefit-of-the-bargain damages are considered general damages, we hold that
Allied was not required to specifically plead them. See Leyendecker & Assocs., Inc. v. Wechter, 683
S.W.2d 369, 373 (Tex. 1984) (benefit-of-the-bargain damages is a form of general recovery); see Hughes
v. Houston Northwest Medical Ctr., Inc., 680 S.W.2d 838, 841 (Tex. App.--Houston [1st Dist.] 1984,
writ ref'd n.r.e.). We overrule Green's third point of error.

 In his fourth point of error, Green challenges the legal and factual sufficiency of the evidence
supporting the trial court's judgment that Green fraudulently induced Allied to enter the oral agreement. 
Specifically, Green argues that the evidence is legally and factually insufficient to support the required
findings of fraudulent intent and reliance. 

 In deciding a no-evidence point, we consider only the evidence and inferences tending to
support the finding of the trier of fact and disregard all evidence and inferences to the contrary. Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan Auto Group, Inc., 786 S.W.2d
670, 671 (Tex. 1990). We will uphold the finding if more than a scintilla of evidence supports it. Crye,
907 S.W.2d at 499; Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752, 755 (Tex. 1970); In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a finding amounts to more
than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. 
Crye, 907 S.W.2d at 499; Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); William
Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L.
Rev. 515, 522 (1991). When determining whether the evidence is factually sufficient to support the
judgment, we must consider and weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); see generally Powers & Ratliff, 69 Tex. L.
Rev.515. 


Fraudulent Intent

 To support a finding of fraud Allied was required to prove that Green "made
representations with the intent to deceive and with no intention of performing as represented." Formosa
Plastics, 41 Tex. Sup. Ct. J. at 293; Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex.
1986). 

 Green first argues that the evidence is insufficient to show that he in fact ever made
representations to pay Allied $150 per hour. To support his contention Green presented evidence that
Allied submitted invoices to Green which referenced the May 1994 revoked written agreement requiring
only a $3,500 flat monthly rate for services rendered. The invoices stated that they were "[f]or professional
services rendered...in connection with the Consulting Services Agreement dated May 17, 1994." 
Furthermore, Green introduced a loan application filed by Starnes at University Federal Credit Union which
only contained the revoked written agreement and made no mention of an oral agreement requiring Green
to pay Allied an hourly fee of $150.

 Second, Green argues that even if the evidence is sufficient to show that he made a
representation to pay Allied $150 for every hour of service, the evidence is insufficient to show that he
never intended to perform such an agreement. Green argues that the only evidence presented by Allied
on this issue was Green's own testimony that he never intended to pay Allied $150 per hour for its time. 
Green argues that, in context, this statement only meant that he intended to pay for services at the $150 per
hour rate but limited to the maximum of $3,500 per month pursuant to the revoked written agreement. 
Green contends that the jury's finding of fraudulent intent is premised on nothing more than Green's denial
that he was ever bound by an oral contract to pay the $150 per hour demanded by Allied for all services
rendered. (3)

 Allied rejoins by arguing that there is ample evidence proving that Green fraudulently agreed
to pay Allied $150 per hour to pursue the collection of Green's judgment. First, to support Starnes's
testimony that Green agreed to pay Allied $150 per hour and to discontinue the terms of the written
agreement, Allied introduced a memo written by Starnes to Green on June 23, 1995. The memo outlined
their oral agreement and stated in part that:


You have made clear your position regarding Allied Interests' engagement in that it has
always been your intent to compensate Allied Interest Inc. for my services at a rate of
$150.00 per hour for all time I will spend in the future and/or have spent in the past on
your and/or Green Capital's behalf. 



Second, Hank Chamberlain, an attorney who assisted in the collection effort, testified that Green made it
clear to him that he (Green) was paying Allied $150.00 per hour for services rendered during the collection
effort. Third, Doug Brothers, the attorney who represented Green in the whistleblower suit, testified that
immediately before the State's payment, Green represented to him that he (Green) owed Allied an amount
that was significantly more than the flat rate of $3,500 per month and was consistent with a pledge of $150
per hour. Fourth, as to the invoices, Allied introduced evidence that it did not realize that they contained
language referencing the revoked written agreement until after some of the invoices had been sent out. 
However, once it discovered the error, Allied immediately removed such language on invoices it later
prepared for Green. Finally, Allied argues that Green's statement regarding his intent not to pay the $150
hourly fee was not the only evidence supporting the jury's finding that Green never intended to perform the
oral agreement. Aside from the evidence mentioned above, Allied also presented evidence of Green's
intense dislike for written agreements. This evidence was introduced to show that Green did not want to
be bound by promises made in the past. Although this primarily demonstrates breach of contract, this
evidence could also be used to infer that Green never intended to be bound by the agreement. Green
himself admitted that he did not like written agreements. 

 Intent to deceive is "a fact question uniquely within the realm of the trier of fact because it
so depends on credibility of the witnesses and the weight to be given to their testimony." Spoljaric, 708
S.W.2d at 434. Having examined the evidence above, we hold that the evidence is legally and factually
sufficient to support the trial court's finding of fraudulent intent.


Reliance

 Green also contends that there is insufficient evidence of reliance on the oral agreement to
support the trial court's judgment that Green committed fraud. We disagree.

 Starnes testified that the main reason the parties revoked the written agreement requiring
Green to pay Allied a flat rate of $3,500 per month was because it was insufficient to compensate Allied
for all the time it spent collecting Green's judgment and the lost opportunities to assist and recruit other
clients. Starnes further testified that had he not been assured that he would be fairly compensated at a rate
more than what was reflected in the revoked written agreement he would not have continued to work on
Green's project. As evidence of this fact, Allied introduced correspondence from Starnes to Green on
numerous occasions indicating that he was having to dip into his savings to make ends meet, and that he
could not and would not work on Green's project for only $3,500 per month. Furthermore, members of
the collection team assembled by Starnes testified as to the substantial amount of work Starnes performed
for Green in light of their oral agreement. For example, Chamberlain testified that Starnes worked almost
full time on Green's project. Former district judge Harley Clark testified that Starnes was "dedicated" to
Green's cause and that his involvement was certainly no less, and probably a lot more, than Clark's own
involvement, which he characterized as "fairly substantial for a long period of time." Finally, Peggy Hubble,
a media specialist, testified that Starnes played a "major role" in the collection effort--performing most of
the research and coordinating the efforts of the other team members. 


 Green rejoins by offering evidence that Allied did not have very much work prior to
Green's collection effort and therefore misrepresented itself by stating it lost opportunities to take on other
clients. For example, Green introduced evidence that in May 1994, Allied had only a few projects because
of a lawsuit in which Starnes was a plaintiff. Green also points out that in the month Allied took on Green's
collection effort, Allied's other clients represented only one-quarter of Allied's billing. Finally, Green
directs us to the fact that Starnes could not specifically identify any opportunities he missed due to his work
for Green. 

 Given all of the evidence, particularly the substantial amount of time and effort Starnes
devoted to Green's collection effort, we hold that the jury's finding of Allied's reliance on the oral
agreement is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Green's fourth point of error is overruled.

 In his fifth point of error, Green argues that the trial court erroneously awarded exemplary
damages without requiring Allied to obtain the threshold finding of "clear and convincing evidence" on the
fraud question in the liability phase of the trial as required by section § 41.003(a) of the Texas Civil Practice
and Remedies Code. (4) We disagree. 

 When the jury was asked to determine whether Green committed fraud in the liability phase
of the trial, the court's charge did not require the jury to find by a standard of "clear and convincing
evidence." However, as discussed below, because Green failed to object to the questions submitted to
the jury concerning the fraud issues, we hold that Green failed to properly preserve this point of error at
trial. 


Failure to submit a question shall not be deemed a ground for reversal of the judgment,
unless its submission, in substantially correct wording, has been requested in writing and
tendered by the party complaining of the judgment; provided, however, that objection
to such failure shall suffice in such respect if the question is one relied upon by the
opposing party.



Tex. R. Civ. P. 278 (emphasis added). Prior to the court's submission of its charge to the jury in the
liability phase of the trial, the court held a charge conference to receive the parties' objections. Green made
no objection that the fraud or harm resulting therefrom must be established by "clear and convincing
evidence" as required by section § 41.003(a) of the Texas Civil Practice and Remedies Code. Instead,
the court's charge placed the burden of proof throughout by a "preponderance of the evidence." To
complain of an erroneous jury charge, Green was required to object to the charge pursuant to Rule 278. 
Because no objection was made, Green failed to preserve any error for our review. Green's fifth point of
error is overruled.

CONCLUSION

 Having overruled all of Green's points of error, we affirm the trial court's judgment.



 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: February 26, 1998

Publish 

1. According to Allied, the terms of the oral agreement required Green to pay Allied $3,500 per
month. However, if Green collected at least $2,000,000 from the State, Green would be required to pay
Allied $150 per hour for all services rendered, offset by the total monthly amounts previously paid. 
Because Green collected over thirteen million dollars from the State, Allied argues that Green was required
to pay Allied $150 per hour for services rendered. 
2. It is undisputed by the parties that the written agreement was subsequently revoked. 
3. Green contends that the evidence in this case establishes nothing more than a good faith dispute
between the parties as to the existence of an oral agreement. Green argues that holding him liable for fraud
in this case could create potential liability in every instance where a party emphatically denies ever having
made the promise upon which the fraudulent inducement claim is based. We agree that Green's naked
assertion that he never intended to perform on a promise which he denied making, standing alone, might
be factually insufficient. However, there is ample circumstantial evidence in the record to support the jury's
finding that Green's conduct constituted an intent to receive full services from Allied without paying the
appropriate hourly rate. 
4. Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (West 1997) states:


Except as provided in Subsection (c), exemplary damages may be awarded only if the
claimant proves by clear and convincing evidence that the harm with respect to which
the claimant seeks recovery of exemplary damages results from: 


(1) fraud; 

(2) malice; or 

(3) wilful act or omission or gross neglect. . . .


e trial, the court's charge did not require the jury to find by a standard of "clear and convincing
evidence." However, as discussed below, because Green failed to object to the questions submitted to
the jury concerning the fraud issues, we hold that Green failed to properly preserve this point of error at
trial. 


Failure to submit a question shall not be deemed a ground for reversal of the judgment,
unless its submission, in substantially correct wording, has been requested in writing and
tendered by the party complaining of the judgment; provided, however, that objection
to such failure shall suffice in such respect if the question is one relied upon by the
opposing party.



Tex. R. Civ. P. 278 (emphasis added). Prior to the court's submission of its charge to the jury in the
liability phase of the trial, the court held a charge conference to receive the parties' objections. Green made
no objection that the fraud or harm resulting therefrom must be established by "clear and convincing
evidence" as required by section § 41.003(a) of the Texas Civil Practice and Remedies Code. Instead,
the court's charge placed the burden of proof throughout by a "preponderance of the evidence." To
complain of an erroneous jury charge, Green was required to object to the charge pursuant to Rule 278. 
Because no objection was made, Green failed to preserve any error for our review. Green's fifth point of
error is overruled.

CONCLUSION

 Having overruled all of Green's points of error, we affirm the trial court's judgment.



 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: February 26, 1998

Publish 

1. According to Allied, the terms of the oral agreement required Green to pay Allied $3,500 per
month. However, if Green collected at least $2,000,000 from the State, Green would be required to pay
Allied $150 per hour for all services rendered, offset by the total monthly amounts previously paid. 
Because Green collected over thirteen million dollars from the State, Allied argues that Green was required
to pay Allied $150 per hour for services rendered. 
2. It is undisputed by the parties that the written agreement was subsequently revoked. 
3. Green contends that the evidence in this case establishes nothing more than a good faith dispute
between the parties as to the existence of an oral agreement. Green argues that holding him liable for fraud
in this case could create potential liability in every instance where a party emphatically denies ever having
made the promise upon which the fraudulent inducement claim is based. We agree that Green's naked
assertion that he never intended to perform on a promise which he denied making, standing alone, might
be factually insufficient. However, there is ample circumstantial evidence in the record to support the jury's
finding that Green's conduct constituted an intent to receive full services from Allied without paying the
appropriate hourly rate. 
4. Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (West 1997) states:


Except as provided in Subsection (c), exemplary damages may be awarded only if the
clai