TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00224-CV






Alfred Edwin Pevler, Appellant




v.




Lillie Lorana Pevler, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. 97-0291, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING







 Alfred Edwin Pevler, appellant, appeals from a jury award favoring appellee, Lillie
Lorana Pevler. Mrs. Pevler sued appellant alleging fraud, intentional infliction of emotional
distress, breach of contract, and harassment. After a trial on the merits, the jury found for Mrs.
Pevler on all of her claims and awarded her $400,000 in damages, as well as attorney's fees and
rescission of the contract between appellant and Mrs. Pevler. Appellant appeals, arguing in
thirteen points of error that: the evidence was legally and factually insufficient to support the
causes of action; the damage awards were improper and duplicative; attorney's fees were
improperly awarded; and, the trial court abused its discretion in ruling on two motions. We will
modify the trial court's award of damages and affirm the trial court's judgment as modified.


BACKGROUND


 Lillie Lorana Pevler owned 5.89 acres of land in Wimberley, Texas, purchased by
Mrs. Pevler and her late husband in three transactions: 1.26 acres containing a red house in 1968
("Tract One"), 3.35 acres in 1977 on which a barn, horse stalls, and rodeo arena were constructed
("Tract Two"), and 1.27 acres purchased in 1982 which held a larger residence for the Pevler
family ("Tract Three"). (1) Mrs. Pevler's property enjoyed premium value due to its proximity to
the Blanco River. Mrs. Pevler, a seventy-three-year-old high school graduate, operated a horse-boarding facility, gave riding lessons on the property, and rented other parts of the property for
income.

 Alfred Edwin Pevler is Mrs. Pevler's foster son. Appellant came into the Pevlers'
care because appellant's biological mother, Mrs. Pevler's sister, was incapable of caring for him. (2) 
Appellant remained a member of the Pevler family until adulthood. He has an engineering degree
from Southern Methodist University and owns a business in Dallas County.

 By 1992, Mrs. Pevler was having serious financial difficulties in addition to her
continuous medical problems. She was $7,000 behind on her mortgage payments on Tract Three. 
Both parties agree that in 1992 Mrs. Pevler executed a deed transferring Tract One to appellant. 
However, the parties differ as to the circumstances surrounding this sale. Appellant maintains that
he was given Tract One in fee simple in return for paying the mortgage on Tract Three. Mrs.
Pevler claims that the agreement granted her a life estate in Tract One and the right to collect the
rentals from the property. Appellant disputes the grant of a life estate, and further argues that any
agreement allowing Mrs. Pevler to collect the rentals occurred apart from the sale. The fair
market value of Tract One in 1992 was approximately $96,000; appellant paid approximately
$12,000 for the property.

 In addition to transferring Tract One to appellant, Mrs. Pevler transferred Tract
Two to him on November 13, 1995. Mrs. Pevler claims that she transferred this property to
appellant in return for his promise to support her financially as long as she needed and the grant
of a life estate in the property, with the right to use the property as she always had and collect the
rentals. Appellant denies any such agreement was made as part of the sale. By the time of the
trial in 1997, Tracts One and Two had a combined fair market value of approximately $170,000;
appellant paid Mrs. Pevler less than $15,000 for both tracts.

 A dispute arose between Mrs. Pevler and appellant regarding Mrs. Pevler's rights
in the properties transferred to appellant. Appellant did not provide the financial support Mrs.
Pevler claims he had promised in exchange for Tract Two. He instructed renters on the properties
to stop paying Mrs. Pevler rent, allowing them to remain on the property without providing Mrs.
Pevler any income. Appellant also ordered Mrs. Pevler to remove her horses from the properties,
further diminishing any opportunity for Mrs. Pevler to earn income from the property. Mrs.
Pevler protested these actions, claiming they violated the agreements that were part of the transfers
of Tracts One and Two. In April 1996, appellant posted the properties for sale for a price of
$90,000. In April 1997, he filed an eviction lawsuit against Mrs. Pevler. When that suit was not
successful, he attempted to file criminal trespass charges against her with the Hays County District
Attorney's Office. In addition, communications from appellant to Mrs. Pevler became
increasingly hostile and profane. Finally, Mrs. Pevler filed this suit against appellant on April 8,
1997.

 The case was tried to a jury on theories of intentional infliction of emotional
distress, fraud, breach of contract, and harassment. The jury found in favor of Mrs. Pevler on
all theories. The court ordered a constructive trust for the properties with Mrs. Pevler as
beneficiary, rescinding the transfer of Tracts One and Two from Mrs. Pevler to appellant. The
court awarded Mrs. Pevler $200,000 in actual damages ($40,000 for intentional infliction of
emotional distress, $90,000 for fraud, $35,000 for breach of contract, and $35,000 for
harassment), and $200,000 in punitive damages. The court also awarded attorney's fees of
$160,000 (40% of Mrs. Pevler's award), pre-judgment interest from July 9, 1996, at a rate of
10%, post-judgment interest at the same rate, and all court costs. Appellant appeals alleging
thirteen points of error: (1) there was no evidence, or alternatively, insufficient evidence, to
support the award for intentional infliction of emotional distress; (2) there is no cognizable cause
of action for harassment under Texas law; (3) there was no evidence, or alternatively, insufficient
evidence, to support the award for harassment; (4) the award of damages for harassment would
constitute an improper double recovery; (5) there was no evidence, or alternatively, insufficient
evidence, to support the award for fraud; (6) there was no evidence, or alternatively, insufficient
evidence, to support the finding that appellant breached his contract; (7) there was no evidence,
or alternatively, insufficient evidence, to support the award of breach of contract damages; (8)
rescission and breach of contract damages are alternative remedies, and the award of both
constituted an improper double recovery for Mrs. Pevler; (9) the trial court erred in rescinding
the contract between appellant and Mrs. Pevler without returning appellant's consideration given
for the properties; (10) the fraud and breach of contract damages were based on the same conduct,
awarding both constituted an improper double recovery; (11) there was no evidence, or
alternatively, insufficient evidence, to support the award of attorney's fees; (12) there was no
sustainable predicate for the award of punitive damages; and, (13) the trial court abused its
discretion by neither quashing Mrs. Pevler's second amended pleading nor granting appellant's
motion for continuance because Mrs. Pevler's second amended pleading constituted unfair surprise
and deprived appellant of his right to a fair trial.


DISCUSSION

Sufficiency of the Evidence

 Several of appellant's points of error challenge the legal and factual sufficiency of
the evidence supporting a jury finding. When deciding an issue of legal sufficiency, we are
limited to considering only the evidence tending to support the verdict of the jury. We must
therefore disregard all evidence contrary to that verdict. See Mancorp, Inc. v. Culpepper, 802
S.W.2d 226, 227 (Tex. 1990). If the evidence supporting the jury's verdict would enable
reasonable and fair-minded individuals to differ in their conclusions, the evidence is legally
sufficient. See Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); see also William
Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex.
L. Rev. 515, 522 (1991). Thus, if there is more than a scintilla of evidence supporting the jury's
finding, it is legally sufficient. See Continental Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444,
450 (Tex. 1996).

 In reviewing a jury verdict for factual sufficiency, we must consider and weigh all
the evidence; the jury verdict will not be set aside unless the evidence is so weak or the verdict
is so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); In re King's Estate, 244 S.W.2d 660,
661 (Tex. 1951); see generally Powers & Ratliff, 69 Tex. L. Rev. 515.


Fraud

 Appellant's fifth point of error argues that the trial court erred because there was
no evidence to support the award for fraud. We disagree.

 At trial, Mrs. Pevler was required to prove the six elements of fraud: (1) a material
misrepresentation, (2) which was false, (3) and which was either known to be false when made
or asserted without knowledge of its truth, (4) which was intended to be acted upon, (5) which was
relied upon, (6) and which caused injury. Formosa Plastics Corp. USA v. Presidio Eng'rs &
Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998). In order for Mrs. Pevler to show that
appellant knew his promise to allow her to retain a life estate in Tracts One and Two and continue
collecting the rentals therefrom was false, she was required to prove that appellant's
representations were made with "the intent to deprive and with no intention of performing as
represented." Green v. Allied Interests, Inc., 963 S.W.2d 205, 208 (Tex. App.--Austin 1998,
pet. denied) (citing Formosa Plastics, 960 S.W.2d at 48, and Spoljaric v. Percival Tours, Inc.,
708 S.W.2d 432, 434 (Tex. 1986)). Appellant specifically argues that there was no evidence of
fraudulent intent. He argues that even if he made such representations, Mrs. Pevler presented no
evidence that he did not intend to perform those promises at the time of the transfers. However,
intent to defraud is often not susceptible of direct proof, and thus may be proven by circumstantial
evidence. See Spoljaric, 708 S.W.2d at 435. Intent may be inferred from subsequent acts. Id.
at 434.

 Mrs. Pevler testified that appellant promised that when she sold him the properties
she would have a life estate in the property and would be able to continue collecting the rents. She
testified that they agreed he would pay the applicable taxes and she would be responsible for
upkeep of the premises. Appellant testified that he made no such promise to Mrs. Pevler. While
failure to perform a promise, standing alone, is not evidence of an intent not to perform, a
subsequent denial of ever making a promise can be considered circumstantial evidence of intent
to defraud. Id. at 435. In addition, slight circumstantial evidence of fraud, when coupled with
a failure to perform as promised, is sufficient for a finding of fraudulent intent. Id. Mrs. Pevler
supported her version of events by illustrating the great disparity between the price paid by
appellant for the properties ($15,000) and the fair market value ($170,000). This adds credence
to her claim that she accepted a significantly lower value for the property in exchange for a life
estate and the concomitant rental income.

 That the jury chose to believe Mrs. Pevler and disbelieve appellant is completely
within its discretion; intent to deceive is a fact question uniquely within the province of the trier
of fact due to the dependence of such a determination upon the credibility of witnesses. Green,
963 S.W.2d at 209 (citing Spoljaric, 708 S.W.2d at 434). We hold that the evidence is legally
sufficient to support a claim of fraud. Moreover, viewing all of the evidence as a whole, the
record contains factually sufficient evidence to support the jury's verdict. Accordingly, we
overrule appellant's fifth point of error.


Breach of Contract

 Appellant's sixth point of error challenges the jury's finding that he breached his
contract with Mrs. Pevler, arguing the evidence was both factually and legally insufficient to
support such a finding. Mrs. Pevler claimed she was guaranteed a life estate in Tracts One and
Two and that she would be allowed to retain the rentals for the properties. In exchange for those
guarantees from appellant, she transferred Tracts One and Two to him at prices that were
substantially below the fair market value. The jury was presented evidence of the substantial
disparity between fair market value and the price paid by appellant for the properties. The jury
found a valid contract and found appellant in breach of that contract. Appellant challenges the
sufficiency of this evidence, claiming that evidence of oral agreements was admitted in violation
of the parol evidence rule since his promises were not included in the bills of sale for the
properties. See Tripp Village Joint Venture v. MBank Lincoln Ctr., N.A., 774 S.W.2d 746, 749
(Tex. App.--Dallas 1989, writ denied) (in the absence of fraud, mistake, or accident, extrinsic
evidence is inadmissable to vary terms of written agreements that are complete and unambiguous
on their face). However, fraud is an exception to the parol evidence rule. See Pulchny v.
Pulchny, 555 S.W.2d 543, 545 (Tex. Civ. App.--Corpus Christi 1977, no writ) (in deciding
whether contract was procured by fraud, court may properly consider the transaction, the
circumstances surrounding the transaction, the interests of parties and their relationship, and all
other relevant circumstances). 

 The jury found fraud, and we have upheld that finding. Therefore, it was not
improper for the jury to consider appellant's oral guarantees to Mrs. Pevler as part of the
contractual agreement to sell the property. Once the jury found the existence of an agreement, the
jury could also find appellant in breach of that agreement. After reviewing the evidence, we hold
that the evidence is both legally and factually sufficient to support the jury's finding. We overrule
appellant's sixth point of error.


Intentional Infliction of Emotional Distress

 Appellant next argues that the evidence was both legally and factually insufficient
to support the award for intentional infliction of emotional distress. The jury found that appellant
intentionally inflicted emotional distress upon Mrs. Pevler and awarded her $40,000 in damages. 
Appellant argues that the conduct set forth by Mrs. Pevler was insufficient to sustain an award for
intentional infliction of emotional distress.

 At trial, Mrs. Pevler was required to prove the four elements of intentional
infliction of emotional distress: (1) that appellant acted intentionally or recklessly; (2) that his
conduct was extreme or outrageous; (3) that appellant's actions caused her emotional distress; and,
(4) that the emotional distress she suffered was severe. See Twyman v. Twyman, 855 S.W.2d 619,
621-22 (Tex. 1993) (adopting Section 46(1) of the Restatement (Second) of Torts (1965)). 
Appellant specifically challenges the sufficiency of the evidence with regard to the outrageousness
of his conduct and the severity of Mrs. Pevler's distress.

 Whether conduct is extreme or outrageous is initially a question for the court. 
Wornick Co. v. Casas, 856 S.W.2d 732, 734 (Tex. 1993). The court's instructions to the jury
defined "outrageousness" as conduct beyond all bounds of decency tolerable in a civilized
community. The jury was also instructed that "outrageous" meant more than "rude." For
conduct to be extreme and outrageous, it must go beyond all bounds of decency, and be regarded
as atrocious and intolerable to a civilized community. Id.; Twyman, 855 S.W.2d at 621. The
extreme and outrageous character of conduct may arise from the actor's knowledge that the victim
is especially susceptible to emotional distress by reason of some physical or mental condition, or
other peculiarity, and the actor persists in his conduct in the face of such knowledge. 
Motsenbocker v. Potts, 863 S.W.2d 126, 132 (Tex. App.--Dallas 1993, no writ) (quoting
Restatement (Second) of Torts § 46 cmt. f (1965)). Petty oppression, indignities, threats,
annoyances, or mere insults do not rise to the level of extreme or outrageous conduct. Soto v. El
Paso Natural Gas Co., 942 S.W.2d 671, 681 (Tex. App.--El Paso 1997, writ denied).

 The jury was presented a great deal of evidence from which to determine that
appellant's conduct was outrageous. First, appellant defrauded his foster mother out of her home
and her means of support. Mrs. Pevler also cites as outrageous several profanity-laced faxes and
telephone calls from appellant. Appellant sent Mrs. Pevler a videotape threatening to withhold
and destroy items he knew carried great sentimental value for her. He also sent her letters
threatening to destroy the buildings and land upon which she relied for income in her old age.

 Appellant argues that these examples of conduct do not rise to the level of
outrageousness required by law. He argues that the threats, rude conduct, and the other conduct
found by the jury fail to establish the legal standard of extreme and outrageous conduct. We
disagree. The evidence illustrates that appellant is young, healthy, and well educated, whereas
his foster mother, Mrs. Pevler, is seventy-three years old, in poor health, and suffering financial
difficulties. Appellant proceeded in his conduct against Mrs. Pevler with knowledge of the
disparity between their ages and education, Mrs. Pevler's declining health, her worsening financial
situation, and her feelings for him as a son; such knowledge can impact upon a determination of
"outrageousness." See Motsenbocker, 863 S.W.2d at 132. Moreover, as individual acts can rise
to the level of extreme and outrageous conduct, so may courses of conduct. Household Credit
Servs., Inc. v. Driscol, 989 S.W.2d 72, 81-82 (Tex. App.--El Paso 1998, pet. filed). We find
that the course of conduct initiated by appellant, when considered in the specific context of their
familial relationship, rises to the level of extreme and outrageous conduct. According to the
evidence, appellant set out to: defraud his foster mother of her property and then charge her with
criminal trespass; deprive her of her primary source of income in her old age; and harass and
torment her with threats to destroy sentimental items. He made such threats through profane
messages by telephone, facsimile, and e-mail. We find sufficient evidence exists to support the
jury's finding of outrageous conduct.

 Appellant next contends that Mrs. Pevler's emotional distress failed to reach a level
of severity cognizable at law. Severe emotional distress means more than mere worry, anxiety,
vexation, embarrassment, or anger. Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). 
Severe emotional distress is meant to include all highly unpleasant mental reactions such as fright,
horror, grief, shame, anger, disappointment, worry, and nausea. Id.; Tidelands Auto. Club v.
Walters, 699 S.W.2d 939, 941, 945 (Tex. App.--Beaumont 1985, writ ref'd n.r.e.). The distress
inflicted must be so extreme that no reasonable person would be expected to endure such distress
without unreasonable suffering. Tidelands, 699 S.W.2d at 941, 945. However, a party need not
demonstrate a physical manifestation of the emotional distress in order to prove a compensable
suffering. See Boyles v. Kerr, 855 S.W.2d 593, 598 (Tex. 1993). Mrs. Pevler testified that: her
heart was broken by appellant's actions and his threats to destroy sentimental objects because she
had considered him a son; she felt tormented by his actions; she had to take a prescriptive drug,
Xanax, due to her inability to sleep brought on by her distress; and the whole affair caused her to
not eat well and "carry on through life somewhat automatically." Given the nature of the
relationship between Mrs. Pevler and appellant, we cannot say that her emotional distress was
mere worry or anxiety. Therefore, we hold the evidence is sufficient to support the jury's finding
that her distress was severe.

 Having found the jury's verdict legally and factually sufficient with regard to the 
outrageousness of appellant's conduct and the severity of Mrs. Pevler's emotional distress, we
overrule appellant's first point of error.


Harassment

 Appellant's second point of error argues that there is no cognizable cause of action
for harassment under Texas law to support the trial court's award of $35,000 for harassment. We
agree. A separate and independent cause of action for harassment does not exist under Texas law. 
Counsel for Mrs. Pevler conceded this point at oral argument. We therefore sustain appellant's
second point of error. (3)


Damages

 Appellant next challenges in several points of error the jury's award of damages. 
Appellant's eighth point of error argues that it was error for the trial court to both rescind the
contract between appellant and Mrs. Pevler and award $35,000 in damages for breach of contract. 
We agree. One induced by fraud to enter a contract has two remedial choices: either to stand on
the contract and recover damages or to rescind. Dallas Farm Mach. Co. v. Reaves, 307 S.W.2d
233, 238-39 (Tex. 1957); Middleman v. Atl. Mut. Ins. Co., 597 S.W.2d 565, 568 (Tex. Civ.
App.--Waco 1980, writ ref'd n.r.e.). However, the aggrieved party is not entitled to both
remedies. Id. The jury could not award Mrs. Pevler both rescission of the contract based on a
finding of fraud and breach of contract damages for appellant's failure to perform the contract. 
Accordingly, we sustain appellant's eighth point of error and reverse the trial court's award of
breach of contract damages. See Birchfield v. Texarkana Mem'l Hosp., 747 S.W.2d 361, 367
(Tex. 1987) (when prevailing party fails to elect between alternative damage remedies, the court
should utilize the finding affording the greatest recovery). Having sustained appellant's eighth
point of error, we need not address his seventh and tenth points.

 In his ninth point of error, appellant argues that upon recission he should be entitled
to recover his consideration paid. The cases cited by appellant do not involve actionable fraud,
however, and we regard them as distinguishable. In the instant cause, the remedy of recission
flows as a result of actionable fraud committed by appellant. We hold that the wrongdoer forfeits
any right to reimbursement, and overrule appellant's ninth point of error.

 Appellant's twelfth point of error argues "that [t]here was no sustainable predicate
finding of liability to warrant the award of punitive damages." Recovery of punitive damages
requires a finding of an independent tort accompanied by actual damages. Twin City Fire Ins. Co.
v. Davis, 904 S.W.2d 663, 665 (Tex. 1995). We have found the jury's determination of fraud
both legally and factually sufficient. The jury awarded $90,000 in damages for the fraud. The
predicate for punitive damages was established. Accordingly, we overrule appellant's twelfth
point of error.


Attorney's Fees

 In his eleventh point of error, appellant argues that the evidence was legally and
factually insufficient to support the award of attorney's fees. He contends that the jury was not
instructed on criteria to be considered by the trier of fact when asked to determine an award of
attorney's fees, and specifically argues that attorney's fees cannot be awarded on the basis of a
contingency fee. See Arthur Anderson & Co. v. Perry Equip. Co., 945 S.W.2d 812, 818 (Tex.
1997). We do not reach this issue because we find it was not preserved in the trial court for
appellate review. Rule 33.1 of the Texas Rules of Appellate Procedure requires preservation of
an issue for appellate review with a complaint to the trial court by timely request, objection, or
motion with sufficient specificity as to make the trial court aware of the complaint, unless the
specific grounds are apparent from the context. Tex. R. App. P. 33.1(a). There is no evidence
in the record or in the motion for new trial of any request or objection with the required specificity
alerting the trial court that appellant objected to the method by which attorney's fees were to be
calculated. Trial error regarding attorney's fees is not fundamental and must be preserved by
timely request. City of Port Isabel v. Shiba, 976 S.W.2d 856, 860-61 (Tex. App.--Corpus Christi
1998, pet. denied). With no issue before us, we overrule appellant's eleventh point of error.


Abuse of Discretion

 In his thirteenth and final point of error, appellant argues that the trial court abused
its discretion by neither quashing Mrs. Pevler's second amended pleading nor granting appellant
a continuance. An abuse of discretion takes the form of an arbitrary and unreasonable use of
discretion where the trial court acted without regard to any guiding rule or principle. E.I. du Pont
de Nemours & Co., Inc. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-43 (Tex. 1985). Texas Rule of Civil Procedure 63 allows
plaintiffs to amend their pleadings up to seven days before the beginning of trial. See Tex. R. Civ.
P. 63. Mrs. Pevler filed her amended pleading ten days before trial. With this in mind, we
cannot say that the trial court acted unreasonably or without regard to any guiding rule by not
quashing the pleading.

 Regarding the denial of appellant's motion for a continuance, the granting or denial
of such motions lies within the sound discretion of the trial court. See Villegas v. Carter, 711
S.W.2d 624, 626 (Tex. 1986). We will not disturb such decisions unless the record discloses a
clear abuse of discretion. Id. We find no evidence in the record that the trial court's denial of
appellant's continuance was arbitrary, unreasonable, or without regard to any guiding legal
principle. Thus, we overrule appellant's thirteenth point of error.


CONCLUSION

 We modify the final judgment of the district court to delete damage awards of
$35,000 for harassment and $35,000 for breach of contract. As modified, we affirm the judgment
in all other respects.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Modified and, as Modified, Affirmed

Filed: June 30, 1999

Do Not Publish

1. Only Tracts One and Two are at issue in this case.
2. Appellant's mother became institutionalized when he was very young, at which time Mrs.
Pevler took him into her care. He alleges that Mrs. Pevler prevented his biological mother from
contacting him after she became institutionalized. Appellant further alleges that Mrs. Pevler's
actions deprived him of a relationship with his biological mother, and because of this dispute, he
asserts that he no longer considers Mrs. Pevler his mother.
3. Because we sustain his second point of error, we need not reach his third and fourth points
of error regarding the sufficiency of the evidence on the issue of harassment and whether the
award of harassment damages would constitute a double recovery.


es, and specifically argues that attorney's fees cannot be awarded on the basis of a
contingency fee. See Arthur Anderson & Co. v. Perry Equip. Co., 945 S.W.2d 812, 818 (Tex.
1997). We do not reach this issue because we find it was not preserved in the trial court for
appellate review. Rule 33.1 of the Texas Rules of Appellate Procedure requires preservation of
an issue for appellate review with a complaint to the trial court by timely request, objection, or
motion with sufficient specificity as to make the trial court aware of the complaint, unless the
specific grounds are apparent from the context. Tex. R. App. P. 33.1(a). There is no evidence
in the record or in the motion for new trial of any request or objection with the required specificity
alerting the trial court that appellant objected to the method by which attorney's fees were to be
calculated. Trial error regarding attorney's fees is not fundamental and must be preserved by
timely request. City of Port Isabel v. Shiba, 976 S.W.2d 856, 860-61 (Tex. App.--Corpus Christi
1998, pet. denied). With no issue before us, we overrule appellant's eleventh point of error.


Abuse of Discretion

 In his thirteenth and final point of error, appellant argues that the trial court abused
its discretion by neither quashing Mrs. Pevler's second amended pleading nor granting appellant
a continuance. An abuse of discretion takes the form of an arbitrary and unreasonable use of
discretion where the trial court acted without regard to any guiding rule or principle. E.I. du Pont
de Nemours & Co., Inc. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-43 (Tex. 1985). Texas Rule of Civil Procedure 63 allows
plaintiffs to amend their pleadings up to seven days before the beginning of trial. See Tex. R. Civ.
P. 63. Mrs. Pevler filed her amended pleading ten days before trial. With this in mind, we
cannot say that the trial court acted unreasonably or without regard to any guiding rule by not
quashing the pleading.

 Regarding the denial of appellant's motion for a continuance, the granting or denial
of such motions lies within the sound discretion of the trial court. See Villegas v. Carter, 711
S.W.2d 624, 626 (Tex. 1986). We will not disturb such decisions unless the record discloses a
clear abuse of discretion. Id. We find no evidence in the record that the trial court's denial of
appellant's continuance was arbitrary, unreasonable, or without