**Affirmed and Opinion Filed May 3, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01413-CV

**THOMAS W. CAMPBELL AND DONNA CAMPBELL, Appellants**
**V.**
**DALE ANN MARTELL, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-06460**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Partida-Kipness

Thomas W. Campbell and Donna Campbell appeal the trial court's judgment

for Dale Ann Martell. The Campbells and Martell were next-door neighbors. The

Campbells sued Martell for negligence and quantum meruit related to water damage

suffered by their home when Martell allegedly failed to maintain drains on her

property. In four issues, the Campbells contend the trial court erred in granting

summary judgment to Martell on the Campbells' claims, denying the Campbells'

motion for summary judgment on Martell's counterclaim, entering a default

judgment when the Campbells failed to appear for trial, and denying the Campbells' motion for a new trial. We affirm the trial court's judgment.

## BACKGROUND

This appeal arises from a dispute between next-door neighbors that dates back to 2009. In a lawsuit filed in justice court in 2013 (the 2013 Lawsuit), the Campbells alleged that water had flowed from Martell's property into the Campbells' house. The houses were zero-lot-line houses in which the exterior wall of the Campbells' house abutted Martell's property. The Campbells alleged that water collected on Martell's property due to heavy rains and a malfunctioning sprinkler. Because their house abutted the property line, the water flowed directly into the Campbells' house. According to the Campbells, Martell had failed to maintain a French drain on her property, which would have diverted the water away from the property line. The Campbells alleged that the incursion had occurred in both 2009 and 2011.

In the 2013 Lawsuit, the Campbells alleged that Martell allowed them to repair Martell's sprinkler and drainage systems, and the incursions stopped after the repairs were made. They sued Martell for negligence, alleging her failure to repair the sprinkler and draining systems caused the damage to the Campbells' house, and for quantum meruit to recover the cost of repairs.

While the suit was pending in the justice court, Martell put her house on the market and received an offer in April 2015. In an effort to prevent the sale, the Campbells filed a notice of lis pendens on April 24, 2015. Martell alleged that the

Campbells sent a copy of the notice to the title company handling the sale, and the prospective buyer revoked the offer. The Campbells removed the notice on November 6, 2015. The justice court conducted a jury trial on the Campbells' claims and entered a take-nothing judgment on January 28, 2016. The justice court's judgment in the 2013 Lawsuit is not the subject of this appeal.

The Campbells filed the instant suit against Martell on May 31, 2017, alleging facts similar to those at issue in the 2013 Lawsuit. Specifically, the Campbells alleged that heavy rains caused water to collect on Martell's property. Because Martell allegedly failed to maintain the drainage system on her property, the water flowed into the Campbells' house through weep holes in the brick veneer.

Martell answered and asserted that the Campbells' claims were barred by res judicata and collateral estoppel. Martell also filed a counterclaim seeking damages from the Campbells' notice of lis pendens. According to Martell, the notice of lis pendens was invalid and was filed to harass Martell, "extort a settlement" of the 2013 lawsuit, and "to scare and cause the potential buyer of Martell's house to back out of the residential sales contract." Martell sought damages under section 12.002 of the civil practices and remedies code, which allows recovery for injuries cause by filing certain fraudulent documents.

Martell moved for summary judgment on her counterclaim and defenses to the Campbells' claims. The Campbells responded. The trial court did not rule on Martell's motion as to her counterclaim but granted summary judgment on her

defenses to the Campbells' claims. The Campbells moved for summary judgment on Martell's counterclaim, and the trial court denied the motion.

Trial on Martell's counterclaim was originally set for August 13, 2019. The parties appeared on this day, but the trial court heard a different case and ordered the parties to return at 9:00 a.m. on August 14, 2019. Only Martell appeared on that day. After waiting for the Campbells to appear, the trial court received Martell's evidence and issued a default judgment on her counterclaim. The Campbells filed a motion and amended motion for a new trial in which they asserted they received no notice that the trial court had reset trial for August 14, 2019, had several meritorious defenses, and that a new trial would not delay or prejudice Martell. The trial court held a hearing and denied the motion, and this appeal followed.

## ANALYSIS

In four issues, the Campbells contend the trial court erred in granting summary judgement on their claims, denying summary judgment on Martell's counterclaim, issuing an oral default judgment, and denying their motion for a new trial.

### A. Summary Judgment Motions

In their first issue, the Campbells contend the trial court erred in granting Martell's motion for summary judgment on her defenses of res judicata and collateral estoppel. In their second issue, the Campbells contend the trial court erred in denying their motion for summary judgment on Martell's counterclaim.

We review a trial court's summary judgment ruling de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

A party without the burden of proof who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* TEX. R. CIV. P. 166a(b), (c). Once the movant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the claimant to come forward with competent controverting evidence that raises a fact issue. *Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999).

### 1. Martell's Motion for Summary Judgment

In their first issue, the Campbells contend the trial court erred in granting Martell's motion for summary judgment on the Campbells' claims. Martell moved for summary judgment on the grounds that the Campbells' claims were barred by res judicata or collateral estoppel, and limitations. According to Martell, the issues raised in the Campbells' claims were addressed by the justice court in the 2013

Lawsuit. The Campbells contend, however, that their claims arose from a different set of facts. Specifically, they contend that because the incursion at issue occurred at a different time and in a different part of their house. Thus, their claims were not barred. We disagree.

At the outset, we note that although Martell moved for summary judgment on both res judicata, collateral estoppel, and limitations grounds, the trial court's order on Martell's motion does not specify the grounds on which summary judgment was granted. Thus, we will affirm the trial court's judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious.[1] *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

"Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992); *see also Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). Thus, res judicata bars claims when there is "(1) a prior final judgment on the merits by a court

---

[1] Martell argued in her motion for summary on limitations that the Campbells based their claims on alleged negligence and gross negligence that occurred in February 2009. Because these claims are subject to a two-year limitations period, *see* TEX. CIV. PRAC. & REM. CODE § 16.003(a), Martell contends they were barred. The Campbells' petition, however, asserts only claims arising from damage that allegedly occurred "[d]uring the spring and early summer of 2015." Martell does not contend that limitations would bar such claims. Thus, we disregard Martell's limitations argument.

of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Daccach*, 217 S.W.3d at 449.

Issue preclusion, or collateral estoppel, prevents relitigation of particular fact issues already resolved in a prior suit. *Barr*, 837 S.W.2d at 628–29. Collateral estoppel applies when (1) the same facts at issue in the second suit were fully litigated in the prior suit; (2) those facts were essential to the judgment issued in the prior suit; and (3) the parties were adversaries in the prior suit. *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

Martell argued in her motion for summary judgment that the damages complained of in the Campbells' petition here should have been raised in the 2013 Lawsuit. Martell specifically notes that the Campbells allege damage "to the interior of their home during the spring and early summer of 2015 due to the grade level of [Martell's] property rising above the slab foundation onto the first level of bricks as well as a clogged 'French drain' on [Martell's] property." When these alleged damages occurred in 2015, the 2013 Lawsuit was still pending in justice court. Indeed, the record reflects that the Campbells' claims in justice court were not tried until January 27, 2016.

The Campbells attempt to distinguish their instant claims from those brought in the 2013 Lawsuit by arguing they arise from damage that occurred "at a different

time period, affected a different part of the property, and . . . was caused by a different set of circumstances." They also contend that adding a claim from the 2015 damage to $9,909.31 in damages they sought from the 2009 and 2011 incidents would have exceed the justice court's jurisdictional damages limit. *See* TEX. R. CIV. P. 500.3(a), 83 TEX. B.J. 493 (Tex. 2013, amended 2020) (limiting justice court jurisdiction to claims of $10,000 or less). Thus, they could not add the claim.

"Jurisdiction is based on the allegations in the petition about the amount in controversy." *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996). "As a general rule, where jurisdiction is once lawfully and properly acquired, no later fact or event can defeat the court's jurisdiction." *Id*. Thus, an amendment that increases the amount in controversy above the court's jurisdictional limits will not deprive the court of jurisdiction if the additional damages accrued because of the passage of time. *Id*. But if an amended petition alleges a new cause of action for damages that exceed the court's jurisdictional limit, the trial court only retains jurisdiction over the original cause of action. *Hawkins v. Anderson*, 672 S.W.2d 293, 296 (Tex. App.—Dallas 1984, no writ) (holding trial court had jurisdiction over original negligence claim but not deceptive trade practices claim asserted in amended petition).

The Campbells contend that the additional damages incurred in 2015 would have resulted in a "new cause of action" that would have exceeded the justice court's jurisdiction. Yet, in both the 2013 Lawsuit and the instant suit, the Campbells have

asserted the exact same cause of action arising from the damage to their property: negligence. Although they also asserted a quantum meruit claim in the 2013 Lawsuit, that claim arises from repairs they purportedly made to Martell's sprinkler system, not Martell's alleged negligent maintenance of her property.

Moreover, the Campbells' negligence claims in the instant suit and the 2013 Lawsuit derive from the same alleged cause: Martell's failure to maintain her drainage system. The Campbells attempt to distinguish the claims by contending that the 2015 damage occurred to a different part of their house than in 2009 and 2011. Specifically, the Campbells contend that the 2015 damage occurred to "the front, living room area" of their property, but the 2013 Lawsuit concerned damage to "the back part of their home." The Campbells' pleadings, however, are not so clear. In the instant suit, the Campbells allege that water entered "the west wall of [the Campbells'] house," "damaging rugs, furnishings and furniture." In the 2013 Lawsuit, the Campbells alleged they "noticed water coming into the lower bedroom area of their property," damaging "carpeting and walls." Neither petition indicates whether the damage was found in the front or back part of the house.

In support of her contention that the same areas of the Campbells' house were at issue in both lawsuits, Martell offered into evidence a 2012 claim report by Texas Farmers Insurance Company that was presented in the 2013 Lawsuit. The report contains photographs and commentary documenting damage found in the Campbells' house in January 2012. The report specifically showed the exterior wall

of the Campbells' house under which the water seeped and identified damage to carpets, rugs, furniture, and paneling located in a "living room" and "large living room," and damage to baseboards and paneling in a "downstairs room." Thus, contrary to the Campbells' contention, the record reflects that both suits concerned damage to the same parts of the Campbells' house. Consequently, the Campbells could have amended their petition in the 2013 Lawsuit to address any alleged continuing injury that occurred in 2015. *See Weidner v. Sanchez,* 14 S.W.3d 353, 362 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding trial court retained jurisdiction after plaintiff amended petition to allege additional damages above the jurisdictional limit that were unforeseen at the time of plaintiff's original petition); *Univ. of Tex. Med. Branch at Galveston v. Danesi*, No. 01-96-01107-CV, 1999 WL 164444, at *10 (Tex. App.—Houston [1st Dist.] Mar. 25, 1999, no pet.) (affirming trial court's jurisdiction over damages arising from continuing injury that exceeded jurisdictional limit).

Because the Campbells' claims in the instant suit are the same as those raised in the 2013 Lawsuit and concern the same facts as were fully litigated in the 2013 Lawsuit, Martell established her right to summary judgment on res judicata or collateral estoppel. *See Daccach*, 217 S.W.3d at 449; *Dewhurst*, 90 S.W.3d at 288. The Campbells failed to come forward with competent controverting evidence raising a fact issue as to either defense. *See Van*, 990 S.W.2d at 753. Accordingly, we overrule the Campbells' first issue.

### 2. The Campbells' Motion for Summary Judgment

In their second issue, the Campbells contend the trial court erred in denying their motion for summary judgment on Martell's counterclaim. Although an order denying a motion for summary judgment is reviewable on appeal when competing motions are filed and the trial court denies one motion and grants the other, *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848, an order overruling or denying a motion for summary judgment alone is not a proper subject for appeal, *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) (denial of a motion for summary judgment is typically not a final appealable judgment); *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 724 (Tex. App.—Dallas 2015, no pet.) (denial of a motion for summary judgment followed by trial on the merits is not appealable). Although both sides moved for summary judgment on Martell's counterclaim, the trial court only denied the Campbells' motion. It did not rule on Martell's motion. Thus, the trial court's denial of the Campbells' motion for summary judgment did not result in a final judgment. Accordingly, the trial court's denial of the Campbells' motion is not a proper subject for appeal, *see Clark*, 460 S.W.3d at 724, and we overrule the Campbells' second issue.

**B.      Default Judgment**

In their third issue, the Campbells contend the trial court erred in granting a default judgment when they failed to appear for trial.[2] In their fourth issue, they contend the trial court erred in denying their motion for a new trial. Both issues are based primarily on the contention that they were unaware that Martell's counterclaim had been called to trial. Consequently, we address the issues together.

The record reflects that trial on Martell's counterclaim was originally set for August 13, 2019. The parties appeared on that day, but the trial court heard a different case and ordered the parties to return the following day. The trial court called the case at 9:30 a.m. on August 14, 2019, and waited until 10:13 a.m. for the Campbells or their counsel to appear. When they did not appear, Martell moved for a default judgment and put on evidence to support her counterclaim and claim for attorney's fees. At the close of evidence, the trial court indicated it would award Martell $46,725.06 in damages, $10,500.00 in attorney's fees, and $10,000.00 in mental anguish damages.

The Campbells filed a motion for a new trial the next day and an amended motion two weeks later, asserting that they failed to appear for trial only because they did not receive any notice from the trial court that trial had been reset for August

---

[2] The Campbells contend on appeal that the trial court's ruling in their absence "offend[s] traditional notions of fair play and substantial justice." This is not the standard for addressing a default judgment on appeal but is an element for establishing personal jurisdiction over a nonresident defendant. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

14, 2019. Had they received notice, the Campbells contend they would have established several meritorious defenses. The Campbells also asserted a new trial would not delay or prejudice Martell because witnesses were still available and the Campbells would reimburse Martell for costs and expenses incurred in obtaining the default judgment. The Campbells generally assert the same arguments on appeal. However, they only assert two meritorious defenses: their notice of lis pendens was truthful and protected by an absolute privilege.

A trial court must set aside a default judgment when the defendant satisfies the test established in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. [Comm'n Op.] 1939). Under this test,

> [a] default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Id*. These requirements also apply to post-answer default judgments. *Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). We review a trial court's ruling on a motion for new trial for abuse of discretion. *Id*. A trial court abuses its discretion by not granting a new trial when the defendant has met all three *Craddock* criteria. *Id*.

### 1. *Craddock*'s First Element

"Under *Craddock*'s first element, 'some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer [or appear] was not because the defendant did not care.'" *In re Marriage of Sandoval*, No. 19-1032, 2021 WL 935908, at *2 (Tex. Mar. 12, 2021) (quoting *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012)). "The failure to respond must arise from more than mere negligence, and the element of conscious indifference can be overcome by a reasonable explanation." *Id*. Consistent with the preference for courts to adjudicate cases on the merits, we must consider the knowledge and acts of the particular defendant to determine whether a failure to appear was not intentional or the result of conscious indifference, but rather due to mistake or accident. *Id*.

In their motion, the Campbells contended that the trial court released them when it decided to try another case after the parties appeared on August 13, 2019, for the initial trial setting. According to the Campbells, the trial court instructed the parties' counsel to call the court coordinator the next day to determine when their case would be tried. The Campbells' counsel contends he called the court coordinator at 9:00 a.m. the next day and left a message requesting a callback. Counsel called again at 10:30 a.m. and left another message. The court coordinator called back at 11:00 a.m. to advise the Campbells that the court held the trial at 9:30 a.m. and issued a default judgment because the Campbells failed to appear. The court coordinator also indicated that he had sent an e-mail message to the parties in the

–14–

afternoon of August 13, 2019, advising the parties that the previously called case had settled and the parties were to appear at 9:30 a.m. on August 14, 2019, for trial. Counsel for the Campbells claimed in the motion for new trial that he did not receive the coordinator's e-mail message.

Martell responded to the Campbells' motion, indicating that her counsel received the court coordinator's e-mail message. Martell further stated that her counsel received oral confirmation of the new trial setting when he stopped by the court coordinator's office before departing the courthouse on August 13, 2019. He further noted that he called the Campbells' counsel multiple times on August 13, 2019, to discuss settlement, but counsel did not answer. Martell and her counsel appeared for trial on August 14, 2019, at 9:30 a.m.

The trial court held a hearing on the Campbells' motion for a new trial. At the hearing, the Campbells reiterated the arguments made in the motion. They also implied that e-mail was insufficient under the local rules to provide notice of the new trial setting. Regardless, the Campbells' counsel asserted that he did not receive an e-mail message from the coordinator. He noted further that a phone call is allowed under the local rules, but that he never received a phone call either. He further argued that he believed he was following the court's instructions by calling the court coordinator the morning of August 14, 2019.

In contrast, Martell's counsel testified that the trial court instructed the parties to appear at 9:30 a.m. on August 14, 2019. He further testified that the court

–15–

instructed the parties to call the coordinator in the afternoon of August 13, 2019, not the morning of August 14, 2019, to confirm the new trial setting. Rather than calling, Martell's counsel went to the coordinator's office before departing the courthouse the afternoon of August 13, 2019, and was told of the new trial setting. He also confirmed that he received the coordinator's e-mail message and called the Campbells' counsel on August 13, 2019, but was forced to leave a message.

At the conclusion of argument, the trial court stated,

[T]he Court did instruct you [the parties] to be back on Tuesday [August 14, 2019] at 9:30 a.m. I specifically recall that. Not only that, but my court coordinator called both of you. Not only that[,] my court coordinator sent an e-mail which the Court will enter for its own exhibit for purposes of this motion for new trial that was sent to both of you at 2:27 p.m. on August 13th 2019 to tomturnerlaw@live.com[,] and so at this point the Court is not inclined to believe that you did not have adequate notice that this case was going to be called at 9:30 on August 14th.

The Court would have been actually more inclined to grant your motion for new trial had you come here and fallen on your own sword and said, Your Honor, I just missed this e-mail. I apologize. I guess I misheard the Court when the court instructed us to be back at 9:30. But instead you blame the [C]ourt clearly for a mistake that was your own.

The trial court then denied the Campbells' motion in open court and later issued a written order.

The Campbells filed a motion for findings of fact and conclusions of law. The trial court issued findings of fact consistent with its oral findings issued in open court. Relevant to the first *Craddock* element, the court found:

- "This cause was called to trial on August 13, 2019. The parties and their respective attorneys of record appeared and announced ready for trial."

–16–

- "The Court called another matter to trial on August 13, 2019, and instructed counsel to appear for trial at 9:00 a.m. on August 14, 2019."

- "The Court coordinator emailed the attorneys on August 13, 2019 at 2:28 pm. stating: 'The Jury Trial that started today settled at lunch. Your case has been called to trial tomorrow August 14, 2019 at 9:30 am. Thank you.' The email was sent to the following email addresses: (1) tomturnerlaw@live.com; and (2) jason@jthomaslaw.com."

- "Counter-Plaintiff Martell and her counsel appeared for trial on August 14, 2019 and announced ready for trial."

- "Neither Counter-Defendant Thomas W. Cambell [sic] nor Donna Campbell, nor their attorney, appeared for trial on August 14, 2019."

- "After waiting almost an hour, the Court called the case to trial and instructed Counter-Plaintiff Martell to proceed with her case in chief."

On this record, we agree with the trial court that the Campbells failed to offer any excuse for their failure to appear. The record reflects that the parties knew their case was next on the trial court's docket. Indeed, there is evidence they were instructed either to appear on August 14, 2019, or contact the court coordinator in the afternoon of August 13, 2019, to verify whether their case would be heard the next day. Yet, the Campbells did neither, and there is no evidence beyond the Campbells' self-serving testimonial evidence that the trial court instructed the parties to call the court coordinator the morning of August 14, 2019.

The record also reflects that the court coordinator attempted to contact the parties by e-mail. There is no evidence that the court coordinator's e-mail message was returned undelivered or that the Campbells' counsel inadvertently missed the e-mail message. *See, e.g.*, *Thompson v. Dallas City Attorney's Office*, No. 05-17-00847-CV, 2018 WL 5077795, at *2 (Tex. App.—Dallas Oct. 18, 2018, no pet.)

–17–

(mem. op.) (counsel's admission that she accidentally opened the notice e-mail message while attempting to open a different message, thus marking the message as "read" and causing her to disregard it, was sufficient excuse under *Craddock*). Instead, and despite evidentiary proof of the coordinator's e-mail message, the Campbells' persisted in denying that they received any message. Additionally, although the Campbells' counsel argued the trial court was required to contact him by telephone under Local Rule 3.05, there is evidence that the Campbells' counsel was not answering his telephone in the afternoon of August 13, 2019, when the coordinator sent notice to the parties.

It was within the trial court's discretion to reconcile any conflicting evidence presented when determining whether the Campbells failed to appear because is accident or mistake. *See, e.g.*, *Abuzaid v. Anani, LLC*, No. 05-16-00667-CV, 2017 WL 5590194, at *4 (Tex. App.—Dallas Nov. 21, 2017, no pet.) (mem. op.) (trial court had discretion not to believe defendant's "unsupported, self-serving statements about computer issues causing him not to 'see'" documents delivered by e-mail). In light of the Campbells' knowledge and acts reflected in the record, the trial court could reasonably conclude their failure to appear was intentional or the result of conscious indifference. *See Sandoval*, 2021 WL 935908, at *2.

### 2. *Craddock's* Second Element

Under the second element of the *Craddock* test, the Campbells were required to "set up" a meritorious defense. *Craddock*, 133 S.W.2d at 126; *see also*

*Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 927 (Tex. 2009). "Setting up a meritorious defense does not require proof 'in the accepted sense.'" *Lerma*, 288 S.W.3d at 927–28 (quoting *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966)). Rather, a motion sets up a meritorious defense if it alleges facts that in law would constitute a defense to the plaintiff's cause of action and includes supporting affidavits or other evidence providing prima facie proof that the defendant has such a defense. *Id*. at 928. Once these requirements are met, the court should not consider the nonmovant's controverting evidence. *Id*.

In their amended motion for a new trial and in the hearing on their motion, the Campbells asserted that they "had several meritorious defenses." These defenses included a claim the notice of lis pendens did not violate section 12.002 because it was not a fraudulent lien or claim but merely a truthful notice of their negligence and quantum meruit claims. They further asserted that the notice did not violate section 12.007 of the property code because, although the quantum meruit claim did not create a lien on Martell's property, it did create an interest. The Campbells also asserted a defense that Martell never attempted to have the notice removed or expunged, that her counterclaim was "only filed in retaliation for this negligence suit," and they she did not suffer any financial loss as a result of the notice. Specifically, they claimed they would show at trial that the notice of lis pendens was truthful and protected by an absolute privilege, that Martell could have sought expunction or removal of the notice in a district court, and that Martell was not

injured by the notice. The trial court noted at the hearing that it had already addressed the question of the Campbells' absolute privilege in its denial of the Campbells' motion for summary judgment on Martell's counterclaim.

Martell responded that a notice of lis pendens is only privileged if it is filed in accordance with the property code, and that the Campbells' notice was not valid and was filed only to prevent Martell from selling her property. Martell further noted that the Campbells had no legal interest in Martell's property.

Relevant to the second *Craddock* element, the trial court found:

- "Counter-Plaintiff Dale Ann Martell . . . and Counter-Defendants Thomas and Donna Campbell . . . were neighbors at Chalfont Place in Dallas County, Texas from 2008 through April 2017."

- "On January 23, 2013 the Campbells sued Martell in Cause Number JC-00083-N, pending in the Justice of the Peace Court, Precinct 3, Place 2, Dallas County, Texas. The Campbell's lawsuit against Martell included claims for negligence and quantum mer[uit]."

- "Martell put her Chalfont Place house for sale in April 2015, and reached an agreement to sell her house for $586,500.00."

- "After Martell entered into an agreement to sell the Chalfont Place house, Martell entered into a contract to purchase a house in Huntsville, Texas. Martell incurred $800.00 in fees for an ins[p]ection report, termite report and earnest fee deposit on the Huntsville property."

- "On April 24, 2015, the Campbells filed and recorded a notice of lis pendens with the Dallas County Clerk."

- "The prospective buyer of Martell's house subsequently backed out of the contract to purchase the Chalfont Place house after learning of the Lis Pendens filed by the Campbells."

- "Martell made numerous requests that the Campbells remove the Lis Pendens."

- "The Campbells notified Martell that they would remove the Lis Pendens only if Martell would settle the Justice of the Peace lawsuit, Cause Number JC-00083-N."

- "The Campbells removed the Lis Pendens on November 6, 2015."

- "Justice of the Peace Cause Number JC-00083-N was tried to a Jury, and a verdict was rendered in favor of Martell."

- "Martell subsequently sold her Chalfont Place house in April 2017 for $565,000.00."

- "Martell sustained a loss of $21,500.00, which constitutes the difference in sale price of the Chalfont Place house in April 2015 and the final sale price in April 2017."

- Martell incurred additional costs for property taxes, upkeep, and rental and sale preparation on her property between April 2015 and April 2017.

- Martell also incurred travel expenses for trips from Huntsville and Dallas to check on the property.

- "Martel received $15,000.00 in rental income in connection with renting her Chalfont Place house in Dallas County, Texas."

- "Martell's total damages, after offsets/credits, equal $46,725.06."

- "Martell sustained mental anguish as a result of the actions of the Campbells."

Based on these facts, the trial court concluded that the notice of lis pendens was not proper and did not comply with section 12.007 of the property code because the 2013 Lawsuit "did not pertain to (1) title to real property; (2) the establishment of an interest in real property; or (3) the enforcement of an encumbrance against real property." Thus, the trial court concluded that the Campbells violated section 12.002 of the civil practices and remedies code when they filed the notice of lis pendens, and that the violation cause Martell's damages.

Despite asserting several meritorious defenses in their amended motion for a new trial, the Campbells assert only two defenses on appeal: their notice of lis pendens was truthful and protected by an absolute privilege. All other defenses asserted in their amended motion for a new trial are, thus, waived on appeal. *See* TEX. R. APP. P. 38.1(f), (i) (appellant's brief "must state concisely all issues or points presented for review" and "must contain a clear and concise argument for the contentions made, with appropriate citation to authorities and to the record").

A notice of lis pendens is a mechanism to give constructive notice to all those taking title to the listed property that a claimant is litigating a claim against the property. *Long Beach Mortg. Co. v. Evans*, 284 S.W.3d 406, 414 (Tex. App.—Dallas 2009, pet. denied). Thus, the purpose of notice is twofold: (1) to protect the filing party's alleged rights to the property at issue in the lawsuit and (2) to put those interested in the property on notice of the lawsuit. *David Powers Homes, Inc. v. M.L. Rendleman Co.*, 355 S.W.3d 327, 336 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Consequently, only a party seeking affirmative relief in "an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property" may file "for record with the county clerk of each county where a part of the property is located a notice that the action is pending." TEX. PROP. CODE § 12.007(a). "To satisfy section 12.007, the suit on which the lis pendens is based must claim a direct interest in real property, not a collateral one." *Evans*, 284 S.W.3d at 414. "In other words, the property against

–22–

which the lis pendens is filed must be the subject matter of the underlying lawsuit." *Id*. If a party seeks a property interest only to secure recovery of damages or other relief, the interest is collateral and will not support a lis pendens. *Countrywide Home Loans v. Howard*, 240 S.W.3d 1, 7 (Tex. App.—Austin 2007, pet. denied).

Martell filed her counterclaim against the Campbells under section 12.002 of the civil practice and remedies code for filing an invalid notice of lis pendens. Section 12.002 prohibits making, presenting, or using a document or other record with:

> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
>
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
>
> (3) intent to cause another person to suffer:
>
>> (A) physical injury;
>>
>> (B) financial injury; or
>>
>> (C) mental anguish or emotional distress.

TEX. CIV. PRAC. & REM. CODE § 12.002(a). A person who violates this provision is liable to each injured person for the greater of $10,000 or actual damages, court costs, reasonable attorney's fees, and exemplary damages. *Id*. § 12.002(b).

Historically, the contents of a notice of lis pendens have been protected by an absolute privilege. *Griffin v. Rowden*, 702 S.W.2d 692, 695 (Tex. App.—Dallas 1985). This is because "the filing of a notice of lis pendens is part of the 'judicial proceeding,'" and any communication "uttered or published in the due course of a judicial proceeding is absolutely privileged." *Id*. at 694 (internal citation omitted). The Campbells rely on this doctrine to claim that their notice of lis pendens was protected by absolute privilege even though they admit it was filed in direct violation of section 12.007 of the property code.

In support of this contention, they cite *Griffin*, *Prappas v. Meyerland Community Improvement Ass'n*, 795 S.W.2d 794, 797 (Tex. App.—Houston [14th Dist.] 1990, writ denied), and *County Investment, LP v. Royal West Investment, LLC*, 513 S.W.3d 575, 582 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). These cases stand for the proposition that the absolute privilege bars tort claims based on the filing of a lis pendens. *See Griffin*, 702 S.W.2d at 695 (tortious interference); *Prappas*, 795 S.W.2d at 795 (slander of title, tortious interference, and "various other causes of action"); *County Inv.*, 513 S.W.3d at 581 (slander of title, tortious interference). Martell, however, has not sued the Campbells in tort, but seeks recovery under section 12.002 of the civil practices and remedies code. *See* TEX. CIV. PRAC. & REM. CODE § 12.002. Additionally, both *Griffin* and *Prappas* predate the enactment of this provision. *See* Act of May 21, 1997, 75th Leg., R.S., ch. 189,

§ 16, 1997 Tex. Gen. Laws 1045, 1056 (current version at TEX. CIV. PRAC. & REM. CODE 12.002). Thus, these cases neither control nor inform our analysis.

Although *County Investment* post-dates the enactment of section 12.002 and includes a claim brought under that provision (fraudulent lien), the court held that the claimant's cause of action was precluded by the absolute judicial privilege. *See County Inv.*, 513 S.W.3d at 581. In so holding, however, the court merely extended its holding in *Prappas*, without analyzing the effect of the legislature's enactment of section 12.002. *See id.* ("We acknowledge that *Prappas* involved only two of the same claims asserted in the present case—slander of title and tortious interference— and the court did not address any fraudulent-lien claim. Regardless, we conclude *Prappas* is also applicable to County Investment's fraudulent-lien claim." (internal citation omitted)). Justifying its reliance on *Prappas*, the *County Investment* court noted, "The *Prappas* court's reasoning for recognizing the privilege was not . . . contingent on the motives of the party placing the lis pendens," and the "availability of the privilege does not turn on whether the party placing the lis pendens acted in good faith and even malice would not dissolve the privilege." *Id.* This conclusion stands in direct contrast to section 12.002's prohibition on filing a fraudulent court record, lien, or property claim with "intent to cause another person to suffer . . . physical injury, . . . financial injury, . . . or . . . mental anguish or emotional distress." TEX. CIV. PRAC. & REM. CODE § 12.002(a)(3). Accordingly, we decline to follow the *County Investment* court's reasoning.

Section 12.002 establishes a statutory remedy for filing a fraudulent court record with intent that the document be "given the same legal effect as a court record . . . evidencing a valid lien or claim against real or personal property or an interest in real or personal property." TEX. CIV. PRAC. & REM. CODE § 12.002(a). Given the filing of a notice of lis pendens is part of a judicial proceeding, *see Griffin*, 702 S.W.2d at 694, section 12.002 applies to the filing of a notice of lis pendens, *see Diogu v. Ratan-Aporn*, No. 01-14-00694-CV, 2015 WL 3982531, at *7 (Tex. App.—Houston [1st Dist.] June 30, 2015, pet. denied) (mem. op.) ("All of [appellant's cited] cases, however, precede the enactment of section 12.002, which recognizes a statutory remedy for a fraudulently filed notice of lis pendens."). Having found no case other than *County Investment* indicating that section 12.002's statutory cause of action is barred by the absolute judicial privilege, we conclude that Martell's counterclaim was not barred.

The Campbells argue on appeal that they also asserted an additional defense in their amended motion for new trial that "the *lis pendens* was absolutely true and correct, even if it was alleged to not exactly fit the three categories set aside in § 12.007 of the Texas Property Code." The fraud at issue under section 12.002(a)(1), however, derives not from false statements in the notice of lis pendens but the lack of a legitimate basis for the notice. *See Brown v. Martin*, No. 13-10-004630-CV, 2011 WL 3366359, at *4–5 (Tex. App.—Corpus Christi–Edinburg Aug. 4, 2011, pet. denied) (mem. op.) (affirming judgment under section 12.002 for filing notice

of lis pendens without a legitimate legal basis); *but cf. James v. Calkins*, 446 S.W.3d 135, 150 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (finding failure to establish a prima facie claim under section 12.002, in part, because the lawsuit underlying the notice of lis pendens concerned the validity of a real property deed).

The Campbells admit they had no legal basis to file the notice of lis pendens on Martell's property. As such, the notice was invalid and prohibited by section 12.002. Martell seeks damages under this provision, which establishes a cause of action for persons injured by such fraudulent filings. Accordingly, we conclude that the Campbells failed to set up a meritorious defense. *See Craddock*, 133 S.W.2d at 126.

### 3.    *Craddock's* Third Element

"The third requirement of *Craddock* is that the motion for new trial be filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff." *Evans*, 889 S.W.2d at 270 (citing *Craddock*, 133 S.W.2d at 126). "The purpose of this element of the *Craddock* test, . . . is to protect a plaintiff against the sort of undue delay or injury that would disadvantage her in presenting the merits of her case at a new trial, such as a loss of witnesses or other valuable evidence." *Id*. "Once a defendant has alleged that granting a new trial will not injure the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff." *Id*.

The Campbells contend on appeal that a new trial would not injure Martell because "[a]ll witnesses [are] readily available" and the Campbells "offered to

reimburse Martell" for costs and expenses incurred in obtaining the default judgment. "The willingness of a party to go to trial immediately and pay the expenses of the default judgment are important factors for the court to look to in determining whether it should grant a new trial." *Id*. at 270 n.3. These factors, however, are not dispositive of whether the motion should be granted. *Id*. at 270.

The Campbells' initial motion for a new trial did not address the third *Craddock* element. Martell responded to the motion, contending that she works as a schoolteacher in Huntsville, Texas, and missed work and incurred expenses to travel to Dallas, Texas, for trial in August 2019, and that she would again have to miss work and incur travel expenses and additional attorney's fees should the trial court grant a new trial. The Campbells' amended motion for a new trial addressed Martell's contentions by asserting that the Campbells would reimburse Martell "for the costs and expenses incurred in taking the default judgment." Martell did not file a response to the Campbells' amended motion but merely reiterated her initial argument in the hearing on the Campbells' motion for a new trial. She did not address the Campbells' offer of reimbursement. Accordingly, we conclude that Martell failed to show an injury that would negate the Campbells' showing of no undue delay or injury. *See id*.

Although the Campbells have met their burden under the third *Craddock* element, they were obligated to meet all three elements. *See Evans*, 889 S.W.2d 268.

Because they failed to meet the first and second elements, we overrule their fourth issue.

### 4. Adequate Notice of The Reset Trial Date

In their third issue, the Campbells contend the trial court failed to provide adequate notice of the reset trial date. According to the Campbells, the trial court was required to contact their counsel by telephone under local rule 3.05, and that the court coordinator's email was inadequate to provide notice. We disagree.

Local rule 3.05 requires only that counsel "be available upon a telephone call from the Court Administrator" during the week a case is set for trial. Dallas (Tex.) Civ. Dist. Ct. Loc. R. 3.05. Contrary to the Campbells' assertion, the rule contains no language requiring a court to provide notice of a setting by telephone.

As previously discussed, the record reflects that the court coordinator provided notice of the reset trial date to the parties by e-mail on the afternoon of August 13, 2019. Rule 245 of the rules of civil procedure permits a court to "reset [a] contested case to a later date on any reasonable notice to the parties." TEX. R. CIV. P. 245. And rule 21a expressly permits notice of a trial setting to be made "by email, or by such other manner as the court in its discretion may direct." TEX. R. CIV. P. 21a(a)(2). Accordingly, we conclude the trial court provided reasonable notice to the parties of the reset trial date, and we overrule the Campbells' third issue.

**CONCLUSION**

The Campbells failed to establish that the trial court erred in granting summary judgment to Martell on their claims, issuing a default judgment on Martell's counterclaim, and denying the Campbells' motion for a new trial. Additionally, the trial court's denial of the Campbells' motion for summary judgment on Martell's counterclaim is not reviewable on appeal. Accordingly, we overrule all of the Campbells' issues on appeal and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

191413F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

THOMAS W. CAMPBELL AND
DONNA CAMPBELL, Appellant

No. 05-19-01413-CV          V.

DALE ANN MARTELL, Appellee

On Appeal from the 193rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-06460.
Opinion delivered by Justice Partida-
Kipness. Justices Pedersen, III and
Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DALE ANN MARTELL recover her costs of this appeal from appellants THOMAS W. CAMPBELL AND DONNA CAMPBELL.

Judgment entered May 3, 2021.